JAMES G. STANLEY *vs.* HOWARD D. PENLEY ET AL.

Cumberland.     Opinion, April 20, 1946.

*Chaplin, Burkett & Knudsen,* for petitioner.

*Jacob H. Berman, Edward J. Berman, Sidney W. Wernick and William B. Mahoney,* for respondents.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, TOMPKINS, JJ.

THAXTER, J.   A hearing was held by a justice of the Superior Court on a writ of habeas corpus petitioned for by a father who sought to obtain custody of his son of the age of three and a half years. The respondents are the maternal grandparents of the child, the child's stepfather, and the child's maternal aunt. After a lengthy hearing, during the course of which the justice presiding had the opportunity of seeing all of the parties, the child was ordered discharged from the custody of the respondents and custody was awarded to the father. The respondents bring the case here on exceptions and on a motion for a new trial on the ground of newly discovered evidence. There is no dispute as to the essential facts.

## THE EXCEPTIONS

The petitioner, James G. Stanley, and Catherine Jane Thompson, the daughter of the respondents, Dr. and Mrs. Thompson, and the sister of the respondent, Mrs. Foss, were married April 26, 1941. A son, James G. Stanley, Jr., was born February 22, 1942. About two weeks after the birth of the child, while the mother after her return from the hospital was staying at the house of the Thompsons, the petitioner left his wife and, except on one occasion, did not thereafter see his child. Five months later a separation agreement was drawn up in contemplation of a libel for divorce to be brought by the wife. Under the terms of this agreement, the mother was to have the sole care and custody of the child, and the father was to purchase a home, the title to which was to be placed in the mother and child as joint tenants. There were other provisions relating to support and maintenance, counsel fees, and a division of property. Jane T. Stanley was granted a divorce from the petitioner at the October Term, 1942, of the Superior Court for the County of Cumberland for the cause of cruel and abusive treatment, and the care and custody of the child was granted to the mother, and provision was made for alimony for the wife and support for the child. In February 1943 the petitioner married Mildred Holland and a son was born in

July of the same year. A second son was born in February or March 1945. The first wife, Jane T. Stanley, was married May 15, 1943 to the respondent, Howard D. Penley. She lived with the second husband and the child in the house which had been bought for her in accordance with the terms of the separation agreement. A child was born of this second marriage in January 1944. In July 1945, Jane T. Penley (formerly Jane T. Stanley) died. At this time her husband, Howard D. Penley, was in the army in the Philippine Islands. He obtained a furlough, came home, and was in court and testified in the hearing on the writ of habeas corpus. James G. Stanley was in the European theatre when he learned of the death of his first wife; and he likewise came home and made immediate claim to the custody of his child. There were conferences on the subject between Stanley and Penley which were not unfriendly. There was a conference between Stanley and Mrs. Thompson which was unfriendly, Mrs. Thompson claiming that Stanley and his second wife were unfit persons to bring up the child.

The final result was that the father petitioned for a writ of habeas corpus. The issue thereby presented to the court was whether custody of the child should be awarded to the grandparents, Dr. and Mrs Thompson, who were supported in their claim to the child by their daughter, Mrs. Foss, and by their son-in-law, Howard D. Penley, or whether custody should be awarded to the child's father, James G. Stanley. A writ of habeas corpus is a proper remedy for a parent who claims to have been unjustly deprived of the custody of a child. *Merchant* v. *Bussell*, 139 Me., 118.

A parent has a natural right to the care and custody of a child, and, though that right is not absolute, it should be limited only for the most urgent reasons. *Merchant* v. *Bussell*, supra.

The claim of the grandparents is that in this instance the natural right of the petitioner to the custody of his child is not controlling, because, they say, neither he nor his second wife are proper persons to rear the child. No evidence is offered in support

of that charge except the circumstances of his separation from his first wife. The record does not disclose the details of what took place at that time. He did leave his wife shortly after the birth of the child and had almost nothing to do with either one of them thereafter, although he did make fairly generous provision for their support. Four months after the divorce he remarried, and four months after his remarriage his former wife was also married. During the time that she was living with her parents he says that any attempt of his to enter the home to see his child would create a scene and he felt it inadvisable to go there. The grandparents concede that they have great bitterness toward him. There may be justification for it, but even so it is a reasonable conclusion that his decision to have no contact with his former wife and her family was a wise one. After his wife's remarriage it must be conceded that his decision to keep away was justified. The child was in the custody of the mother and unquestionably tenderly nurtured and adequately provided for. A new life had been entered upon by all of them. It was better that the old should be forgotten. All this was changed by the death of the former wife. Promptly then and not until then did he assert his claim. It was not seriously opposed by Penley. It was bitterly opposed by the grandparents.

The justice, who heard the evidence below, who had the advantage of seeing and talking to the parties, concedes that the grandparents are cultured, home-loving people who would to the very best of their ability rear this child. But they are respectively seventy-four and sixty years of age. The chances are that should they attempt to bring up this child a readjustment would have to be made later when attachments would have been formed on the part of the child which would then be difficult to break. Penley and Mrs. Foss, though they express a willingness to assist, have their own problems, and their own lives are ahead of them. The evidence amply justifies the conclusion of the presiding justice that this is the time to make the change. It is the interest of the child which is paramount.

The only possible reason for not permitting this father to assume the obligation to care for his son would be that he and his second wife are unfit to do so. The justice below has found that that charge is not substantiated. On the contrary, he has found that the father is a fit person, and all the inferences to be drawn from the evidence point to the justness of that conclusion. He is financially responsible, he has a comfortable home and two other children, and the mere fact that he now, after the mother is gone, asserts his natural right is something in his favor. The claim is that the circumstances of the divorce are sufficient for this court to hold as a matter of law that the father's claim to this child is barred. Viewing the evidence most strongly against him, the inference is justified that prior to the granting of the divorce he had formed an attachment for another woman. Though the details of the difficulties between his former wife and himself are, perhaps fortunately, shrouded in darkness, we may assume that she suffered a grievous wrong. The fact that she was granted a divorce establishes that. But is a father because of such wrongdoing to be forever deprived of his right to his child? Such is the argument of the respondents. Is there nothing that he can do to make requital? Should he be denied the opportunity of making recompense for past wrongs by bringing up the child of the marriage which failed? Or must we establish as a rigid rule of law that he must carry the burden of his transgressions with him for the rest of his journey through life? There was ample evidence to justify the finding of the justice below.

Counsel for the respondents cite the case of *Merchant* v. *Bussell*, supra, in support of their contention. The facts in the two cases are utterly different.

## THE MOTION

The petitioner in his testimony said that he was married the second time in February 1944, and his first child was born in July 1944. Both of these dates should have been 1943. There is nothing to indicate that this was an intentional misstatement. The

correct dates could have been easily established. Assuming that this motion is properly before us, what we have already said in this opinion with respect to the past errors of this petitioner indicates that this new evidence would not justify the granting of a new trial in this case. It does nothing more than corroborate what we have assumed to be the fact.

*Exceptions overruled.*
*Motion overruled.*