EDITHA GLOVER GROVER, PETR.

*vs.*

CLARA GROVER

Kennebec.    Opinion, August 19, 1947.

*Theodore Gonya,* for petitioner.

*Berman & Berman,*
*Matthew McCarthy,* for respondent.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

FELLOWS, J.    This case involves the question of custody of Myra Editha Grover, the daughter of the petitioner and the granddaughter of the respondent.  It comes to the Law Court on exceptions by the respondent to a decree of the Superior Court, which decree ordered a change in a former decree that gave custody to the grandmother.  The exceptions are sustained.

The record is this: Editha Glover Grover married Rodney Paul Grover in 1934, and to them five children were born. The oldest child is this daughter, Myra Editha Grover, aged twelve years. Myra was born at Dixfield, Maine in the home of the respondent, Clara Grover, her paternal grandmother. Myra has lived in her grandmother's home, and with her grandmother, from the time of her birth. It is the only home she has ever known. Her parents moved from Clara Grover's home when Myra was four years old, and took with them their other children. Myra was left with the respondent grandmother. At the June term 1945 of Oxford Superior Court, Rodney Paul Grover obtained a decree of divorce from his wife, for cruel and abusive treatment on the part of the wife, Editha Glover Grover. No order was then made in regard to custody of any child. After the divorce was granted, Mr. Grover and his former wife continued to live together at Dixfield with their four children until August 1945, when Mrs. Grover moved to Norway, Maine and left the four children with the father.

Later, upon the petition of the mother, Editha Glover Grover, the Superior Court in September 1945, after a full hearing, amended the divorce decree by giving the care and custody of four children to the mother and the care and custody of this oldest child, Myra, to the grandmother, Clara Grover. After obtaining the order of custody, the mother went with a man named Harding, whom she had known before her marriage, to the home of her former husband to get her four youngest children. While there, Harding was shot and killed by the former husband, Rodney Paul Grover, who is now serving a life sentence for the crime.

Editha Glover Grover, having then four children to care for and with no means, made application for and received "Mothers Aid" from the state. She now obtains about twenty-nine dollars per week for herself and four children, and she expects an additional sum if she has an extra child.

Out of this "aid," she also has arranged to purchase a home in Norway.

The respondent's household consists of a son Roland, who runs the farm, his wife who is a school teacher, and their son John. John is twenty-five and is principal of Weld Grammar school.

In August 1946 the mother brought this pending petition against the grandmother to further modify the amended divorce decree, and to obtain the custody of this twelve year old daughter, Myra. At the hearing on this petition, the petitioner testified that with the twenty-nine dollars per week now given her by the state, and with the additional aid she will probably receive for an extra child, she will be able to give Myra and the four other children a home. This also was the opinion of Sheriff Francis. Eleven witnesses testified for the respondent in relation to the grandmother's home; her excellent care of the child; Myra's school, church, and Girl Scout activities; the piano lessons furnished by the grandmother; the expectation of a college education, and other facts that might indicate proper and affectionate care. In fact the petitioner herself, in testifying that her daughter Myra had lived for the twelve years with the respondent grandmother, agreed that "Myra has been getting along very well at her grandmother's home as far as food and clothing goes," and that she, the mother, had "consented" at the previous hearing that the grandmother might have the custody. The girl, Myra, testified in no uncertain terms that she desired to live, as she had always lived, with her grandmother because she is "happy" there, and "I just as soon spend the day with my mother, but to spend the night, I couldn't, because I am very homesick when I go away."

After this hearing on the pending petition the court by decree dated October 28, 1946 changed custody from the grandmother to the mother. The exceptions are to this 1946 decree.

One of the most important, if not the most difficult, problems to be decided by any court is the question of proper

custody of minor children at the time of, or after, a divorce. The family "war" is fought by the father and mother, but too often the lifetime scars are carried by their children. Too frequently also, the principals in the divorce are more concerned in defeating the wishes of a former wife, husband, or "relative-in-law," than they are interested in the welfare of the child. The law looks, however, only to the child's welfare; and the father, mother, and other blood relatives, as such, have no rights in or to the child. A child is not "owned" by anyone. The state has, and for its own future well-being should have, the right and duty to award custody and control of children as it shall judge best for their welfare. *Merchant* v. *Bussell*, 139 Me. 118, 121.

Usually the custody and control of minor children is vested jointly in the father and mother as natural guardians. If one of the parents is dead or has abandoned a child such parental custody devolves upon the other. R. S. 1944, Chap. 153, Secs. 16, 18. In the event of a divorce of the parents the justice, making the decree, may provide for the support, care and custody of their minor children, and may determine with which parent they shall live, or may grant custody to a third person; and such an order of custody may be altered at any time if or "as circumstances require." R. S. 1944, Chap. 153, Sec. 69. The paramount consideration for the court at the time of a divorce, or at the time of a requested alteration of a decree regarding custody, is the present and future welfare and well-being of the child. *Merchant* v. *Bussell*, 139 Me. 118; *Stanley* v. *Penley*, 142 Me. 78; 46 Atl. (2nd) 710.

This case is before the Law Court on exceptions, and the question presented is whether there is evidence in the record to support the decree, for if the only conclusion to be drawn does not support the decision, the finding is an error in law and exceptions lie. *Bond* v. *Bond*, 127 Me. 117. Does the evidence, which is made a part of the bill of exceptions, warrant the decree? *Sweet* v. *Sweet*, 119 Me. 81; *Mitchell* v. *Mitchell*, 136 Me. 406, 417, 418.

We feel that the exceptions here must be sustained. The mother is without doubt an estimable person. The sheriff states that in his opinion she is a "good mother," and can feed, clothe and care for the child if the state furnishes the necessary "Mothers Aid," but she cannot do it otherwise. A careful reading of the record shows that there is no evidence of circumstances which authorized the court below to determine that the girl's welfare required a change of custody from the grandmother, who had always cared for her in a good home, to the mother who must depend on public charity and a future increase of state aid. The attorney for the mother argues in his brief that "while the girl's material wants are well cared for, apparently to an exaggerated degree, she is being developed into a completely selfish child." We fail to find any evidence of selfishness on the part of Myra.

Extra state funds for an extra child would undoubtedly assist the mother to better care for her other children, but the welfare of others is not the question presented here. It is the welfare of Myra Editha Grover. The record is bare of any evidence to show that the child should be transferred against her wishes from this home to one where funds might not be sufficient for the bare necessities. Her personal wishes should have great weight. *Merchant* v. *Bussell*, 139 Me. 118, 123.

It is true that the loving care of a mother is a vital necessity to the very young child, but a mother who has not had the responsibility or management of a daughter from her fourth to her twelfth year, and has permitted, or has been obliged to permit, a grandmother to give to her all maternal care, must expect that the child should prefer to remain in the home where she was born and has always lived. This is especially true where the grandmother has furnished all material things as well as motherly care. *Merchant* v. *Bussell*, 139 Me. 118.

If we consider only the testimony of the petitioner we are forced to the conclusion that she is actuated more by a

desire to benefit her other children, and to prevail over a mother-in-law for real or fancied wrongs, than by interest in the welfare of this daughter — a daughter she has attempted to see but little for eight years. There is also a strong suspicion that she has feeling against the grandmother's son, Roland, and his wife, who live in the home with Myra, and have expressed a desire to adopt. She testifies to no fact or circumstances to show that this child's welfare will be advanced or improved by change of custody. The contrary is clear.

This minor child should not, under the existing conditions, be used as a method to force the state to contribute extra funds for a family. The circumstances shown by the record do not permit or require the change of custody made by the sitting justice. The only inference, or conclusion, that can be drawn from the evidence does not support the decree. *Mitchell* v. *Mitchell,* 136 Me. 406, 417.

*Exceptions sustained.*