Sandie E. COSTIGAN

v.

Michael J. COSTIGAN.

Supreme Judicial Court of Maine.

Argued June 5, 1980.

Decided Sept. 4, 1980.

Karen Murphy (orally), Searsport, for plaintiff.

Eaton, Glass & Marsano, Francis C. Marsano (orally), Belfast, Peter K. Mason, Searsport, for defendant.

Before McKUSICK, C. J., WERNICK, GLASSMAN and ROBERTS, JJ., and DUFRESNE, A.R.J.

WERNICK, Justice.

A change of custody proceeding was initiated in 1977 by Sandie Costigan, the natural mother of Michelle Costigan who is now six years of age. On April 24, 1979, the Maine District Court (District Five) decided that although Michelle's paternal grandmother, Virginia Costigan, had suitably cared for her and was "the focus of Michelle's need for security", Michelle's mother should be awarded custody of her. Appealing to the Superior Court (Waldo County) the paternal grandmother sought a stay pending appeal, which was denied. The Superior Court affirmed the District Court judgment, and the paternal grandmother then appealed to this Court. We deny the appeal and affirm the judgment of the Superior Court.

Michelle's natural parents, Sandie and Michael Costigan, were divorced on December 31, 1976. In the divorce proceeding the District Court judge had denied a motion for intervention filed by Michael's parents but he nevertheless, awarded custody of Michelle to Virginia Costigan, her paternal grandmother, with rights of visitation to Sandie and Michael. Sandie then appealed to the Superior Court, which affirmed the District Court. The District Court judge having omitted to state findings of fact or conclusions of law, the Superior Court justice concluded that implicit in the award of custody to the paternal grandmother was a determination that Sandie was an unfit mother. Finding this determination supported by the evidence, the justice denied the appeal, adding the comment:

> "[I]f in the future, the natural mother can demonstrate further maturation and sufficient ability to discharge parental responsibility, the statute [19 M.R.S.A. § 752] provides a judicial remedy for alteration of the custody decree."

Approximately four months later, on December 12, 1977, Sandie moved that the divorce decree be altered to award her the custody of her daughter. Virginia Costigan was permitted to intervene. A hearing was delayed until November 3, 1978, and it was not completed until April 18, 1979. On April 24, 1979, the District Court judge ordered the divorce judgment altered to award the custody of Michelle to her mother, Sandie, with rights of visitation granted to Michelle's father and her paternal grandmother, Virginia Costigan.

In so ruling, the judge articulated these findings of fact. Michelle was a well adjusted five year old child who was being given love and attention by both of her parents and the family of her paternal grandmother. Michelle loved her parents, but she felt perhaps a stronger attachment to Virginia Costigan with whom she had lived most of her life and who had provided a secure, loving and comfortable environment for her.

The judge acknowledged that the prior award of custody to Virginia Costigan had tended to make her the focus of Michelle's need for security and that a change in the existing custodial arrangement would tend to be disruptive for Michelle. Yet, he concluded, Michelle's mother had matured considerably since the divorce, and her personal life had stabilized. She was holding a position of responsibility obtained three years earlier. Her relationship with Michelle had been continuingly good, Sandie being a loving mother attentive to Michelle's needs during their weekly visitation periods. Sandie's home would be a clean and comfortable physical environment for Michelle.

Finding that Sandie was no longer an unfit mother, the District Court judge concluded that even though some disruption would result from changing custody, that fact

> "cannot justify maintaining a status quo which deprives a young child of the nurture and loving care of her mother where the mother has shown herself to be ready and able to discharge her parental responsibilities."

The judge therefore ordered custody awarded to Sandie and further ordered that regular counseling with a qualified child psychologist or psychiatrist be provided during the ensuing three months.

At the time of Sandie's marriage to Michael Costigan, this being her second marriage, Sandie was approximately five months pregnant with Michelle. In her first marriage she had given birth to a severely handicapped deaf child who has remained in the custody of his father. Sandie was twenty–one years old at the time of her divorce from Michael Costigan.

During most of their marriage Sandie and Michael had lived with Michael's parents, and Michael's mother, Virginia Costigan, had assumed a large proportion of the responsibility of caring for Michelle. When Sandie and Michael separated in June, 1976, Sandie and Michelle moved into a small rented house and Sandie obtained employment as a waitress. In November, 1976, upon learning from Michelle that a male friend of Sandie's had stayed overnight in Sandie's home, Michael refused to return Michelle to Sandie. He asked his mother to care for her. Sometime thereafter, but before the custody decision of December 31, 1976, Sandie's boyfriend moved into Sandie's home.

During the period Michelle was in the custody of Virginia Costigan, Sandie visited her regularly, spending about 1½ days a week with her. At the time of the second custody hearing, Sandie's employment and living arrangements remained essentially unchanged.

Michelle's father, Michael, has been erratically employed. He no longer lives at his parents' home, but he continues to visit regularly with Michelle. He is not a party to this appeal.

Virginia Costigan is a full–time homemaker who has had six children, three of whom continue to live at home. While she was Michelle's legal custodian, she had enrolled her in Sunday and nursery school, had arranged for her to have dancing lessons, and she also had provided her with routine pediatric and dental care.

■ The paramount concern of the court in any proceeding concerning child custody is to act in the best interest of the child. *Cooley v. St. Andre's Child Placing Agency*, Me., 415 A.2d 1084 (1980); *Osier v. Osier*, Me., 410 A.2d 1027 (1980). Because human relationships are not likely to remain static throughout more than relatively short periods of time, when a change of custody is sought upon the expiration of a reasonable period of time after a prior order of custody, the court is usually called upon to make an independent determination whether the child's interests will be better served by requiring some alternative custody arrangement.

■ In determining which parent or, as appropriate, what third party, will provide for a child's best interests, the court should consider all factors having reasonable bearing on the physical and psychological well–being of the child. *Osier v. Osier, supra.* We mention as the generally pertinent considerations, among many others that can become involved in particular circumstances: the age of the child, the relationship of the child with his parents and any other persons who may significantly affect the child's best interests, the wishes of the parents as to the child's custody, the preference of the child (if old enough to express a meaningful preference), the duration and adequacy of the current custodial arrangement and the desirability of maintaining continuity, the stability of the proposed custodial arrangement, the motivation of the competing parties and their capacity to give the child love, affection and guidance, and the child's adjustment to his present home, school and community. *See Roussel v. State*, Me., 274 A.2d 909 (1971); *Merchant v. Bussell*, 139 Me. 118, 27 A.2d 816 (1942); *Cooley v. St. Andre's Child Placing Agency, supra; Stanley v. Penley*, 142 Me. 78, 46 A.2d 710 (1946); *Grover v. Grover*, 143 Me. 34, 54 A.2d 637 (1947); Uniform Marriage and Divorce Act §§ 402, 409; Mich.Comp. Laws Ann. § 722.23; J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child (1973).

Each case must be decided on its own facts. The problem is how to weigh the objective data and the subjective evaluations to make a satisfactory predictive judgment as to what will promote the best interests of the child. This delicate balancing, which will include assessing whether the potential benefits to the child's welfare resulting from a change outweigh the possible adverse effects consequent upon change, is left to the sound discretion of that judge who has the singular opportunity to observe the individuals involved and therefore is in the best position to act on behalf of the State as a wise, affectionate and careful parent. *Roussel v. State, supra.*

 Virginia Costigan argues to us that, here, the District Court judge committed an abuse of discretion in according overriding primacy to Sandie's being Michelle's biological mother. The judge did give this fact much weight, but he also carefully examined and evaluated other factors highly relevant to Michelle's well–being. Significantly, he found that a loving and generally good relationship between mother and daughter already existed. He also found that Sandie was both willing and able to care for her daughter. To minimize any adverse effects on Michelle of the change in custody, the judge awarded visitation rights to Virginia Costigan and ordered temporary psychological counseling for the child. Since it is thus apparent that the District Court judge considered *both* the biological and the emotional relationships of the individuals involved in resolving the dispute over Michelle's legal custody, we cannot say he was guilty of an abuse of discretion.

Virginia Costigan also says that the District Court judge was guilty of an independent error of law. This contention is that a comment made by the Superior Court justice who affirmed the original award of custody to Virginia Costigan, to wit, the comment that the judicial remedy of "alteration of the custody decree" would be available if Sandie were to "demonstrate further maturation and sufficient ability to discharge parental responsibility", was treated by the District Court judge as being the "law of the case." If some language in the judge's opinion may suggest that the comment weighed heavily in his balancing assessment, his overall analysis reveals that he made an independent inquiry as to Michelle's best interests and did not consider himself bound by the prior comment of the Superior Court justice, as if it were the "law of the case."

The entry shall be:

Appeal denied; judgment affirmed.

All concurring.