**Laurel B. CYR**

v.

**Peter T. CYR.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 1980.

Decided July 23, 1981.

Preti & Flaherty, Jonathan Piper (orally), John J. Flaherty, Portland, for plaintiff.

Goranites & Libby, Gary W. Libby (orally), Bowie & Matthews, Susan E. Bowie, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

GODFREY, Justice.

Defendant Peter T. Cyr appeals from an order of the Superior Court awarding custody of two minor children to his former wife, Laurel B. Cyr.[1] Peter Cyr challenges the order on the grounds that the trial justice refused to make specific findings of fact and conclusions of law concerning the order, that the Cyr children were denied their asserted constitutional right to the appointment of a guardian ad litem, that the trial justice abused his discretion in declining to appoint a guardian ad litem for the children, and that there was insufficient evidence to support the Superior Court's deci-

---

1. After this Court's decision in *Cyr v. Cyr*, Me., 429 A.2d 210 (1981), Laurel Cyr moved the Superior Court to dismiss Peter Cyr's counterclaim for divorce and for custody of the children. That counterclaim having been ordered dismissed by the Superior Court, the Superior Court's judgment is now final for the purpose of appeal.

sion to award custody of the children to Laurel Cyr. We sustain the appeal as to the first of these grounds; regarding the remaining grounds, the appeal is denied.

On May 11, 1978, Laurel Cyr brought a complaint for divorce against her husband, Peter Cyr, on the ground of irreconcilable differences. Five months later Peter Cyr counterclaimed for divorce on the ground of cruel and abusive treatment. In their divorce petitions each party sought custody of the couple's two minor children.

At the custody hearing the parties themselves testified and also presented the testimony of eyewitnesses and experts in parent-child relations. Following the hearing, the Superior Court awarded custody of both children to Laurel Cyr. In his written order the trial justice found only that neither parent was unfit, that the parties' assertions of their own capabilities as parents were unreliable, that the children were psychologically bonded to both parents, and that a scheme of joint custody was infeasible. Stating that he had no specific criteria for his decision but recognizing that a choice between the parents had to be made, the trial justice granted custody to Laurel Cyr.

1.

*The Sufficiency of the Custody Order*

Three days after the custody order was rendered, Peter Cyr moved the Superior Court under M.R.Civ.P. 52(a) to make specific findings of fact and conclusions of law concerning, among other things, why the trial justice chose Laurel Cyr to be the custodial parent. The trial justice refused to make such findings and conclusions, saying that sufficient reasons for the custody decision were contained in the written order and in his statements during the hearing.

Peter Cyr argues that the Superior Court was obligated to make specific findings of fact and conclusions of law once the appropriate motion was made pursuant to M.R. Civ.P. 52(a). While conceding that such additional findings and conclusions would be unnecessary if the original custody order contained a sufficient explanation of the grounds for the judge's decision, Peter Cyr

maintains that the custody order fails to offer any reason for selecting Laurel Cyr as the custodial parent. Laurel Cyr replies that the trial justice made several findings of fact in the custody order concerning the parties' relative fitness as parents. In Laurel Cyr's view, if Peter Cyr desired a further statement of the exact reasons for the Superior Court's decision, he should have proposed to the judge suggested findings of fact and conclusions of law.

Rule 52(a) of the Maine Rules of Civil Procedure provides that in all actions tried by a judge without a jury, "the court shall, upon the request of a party made as a motion within 5 days after notice of the decision, ... find the facts specially and state separately its conclusions of law thereon ...." When the judge, after a motion under Rule 52(a), directs the moving party to submit proposed findings of fact and conclusions of law, the moving party may be obligated to submit such proposed findings and conclusions in order to preserve his objection to the original judgment or order. *See* 1 R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* 685 (1970). However, when the judge makes no such request, as was true in this case, the movant's failure to propose findings and conclusions does not affect the judge's duty to comply with the movant's request. Hence we must examine the Superior Court's custody order to determine whether it satisfies independently the purpose of Rule 52.

The trial justice's custody order in this case contained four factual findings: that neither party was an unfit parent, that the parties' testimony did not reliably indicate what custody arrangement would be in the children's best interest, that the children had some psychological attachment to each parent, and that the parties' animosity toward each other precluded joint custody. Throughout the custody hearing the judge indicated that his sole purpose in conducting the hearing was to discover how the children's best interest could most effectively be served. However, the custody order lacks any discussion of how custody in Lau-

rel Cyr promotes the children's best interest—the critical finding in a custody decision.

We recognize that the phrase "best interest of the child" is abstract. Nevertheless this Court has endeavored to give that concept some measure of substantive meaning. In *Costigan v. Costigan*, Me., 418 A.2d 1144, 1146 (1980), we held that in determining what person will most certainly provide for a child's best interest, the court must consider all factors which have a reasonable bearing on the physical and psychological well-being of the child. Without purporting to exhaust the range of potentially relevant considerations, we described the following circumstances as those which are generally pertinent to the custody decision: the child's age; the child's relationship with his parents and with others who contribute to his best interest; the parents' wishes as to custody; the child's preference (if the child is old enough to express a meaningful preference) regarding the custodial parent; the duration and adequacy of the current custodial arrangement; the desirability of maintaining continuity; the stability of the proposed custody scheme; the motivation of the parties competing for custody and their ability to nurture and guide the child; and the child's adjustment to his present surroundings.

■ It is apparent from the factors we recited in *Costigan* that the custody decision involves far more than a determination of whether either of the competing parties is unfit; in the majority of cases the judge presiding at the custody hearing will be confronted by parties whose individual qualifications as custodial parent are satisfactory. To choose the greater of two goods is admittedly no easier than to identify the lesser of two evils. Nevertheless, the judge is obliged to make the choice. He must seek not merely to preserve the child from harm, but to discern, "as a wise, affectionate and careful parent," what custody arrangement will further the child's best interest. *See Sheldon v. Sheldon*, Me., 423 A.2d 943, 946 (1980).

This Court has stressed repeatedly that an independent evaluation of the evidence supporting a custody decision is an inappropriate function for an appellate court. *See, e. g., Sheldon v. Sheldon, supra; Cooley v. St. Andre's Child Placing Agency*, Me., 415 A.2d 1084, 1086 (1980); *Osier v. Osier*, Me., 410 A.2d 1027 (1980). When the judge rendering the custody decree gives no reasons for his ultimate decision, however, we are confronted with the task of making our own assumptions regarding what is relevant to the particular child's best interest and then reviewing the record for competent evidence supporting the Superior Court's unexplained choice of the custodial party. A custody order which merely recounts that the award of custody is in the child's best interest leaves the reviewing court with only the trial justice's end result, not the legal or factual predicates for that result. *O'Meara v. O'Meara*, 355 A.2d 561 (D.C.App.1976); *Wurm v. Wurm*, 68 Ill. App.3d 168, 24 Ill.Dec. 753, 385 N.E.2d 894 (1979); *Jones v. Jones*, 620 P.2d 850 (Mont. 1980); *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975); *Gahagan v. Williams*, 263 S.C. 279, 210 S.E.2d 230 (1974); *Haugen v. Haugen*, 82 Wis.2d 411, 262 N.W.2d 769 (1978).

■ In addition to facilitating appellate review, findings of fact and conclusions of law under Rule 52(a) serve to make definite what was decided in the case. 1 R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* 684 (1970). Although custody orders are by statute subject to modification, 19 M.R.S.A. § 752 (1981), they are nevertheless judgments and are binding upon the parties until the court decides that the parties' circumstances have changed substantially and that an alteration of the custody arrangement is in the child's best interest. *See Costigan v. Costigan, supra; Rice v. Rice*, 415 A.2d 1378 (D.C.App.1980); *Garvey v. Garvey*, 383 So.2d 1172 (Fla.App.1980); *Bergstrom v. Bergstrom*, 296 N.W.2d 490 (N.D.1980); *Rusin v. Rusin*, 103 Misc.2d 534, 426 N.Y.S.2d 701 (S.Ct.1980); *Matter of Marriage of Padbury*, 46 Or.App. 533, 612 P.2d 321 (1980). Because modification of the custody decree is appropriate only on

the grounds of a material change of circumstances, the decree serves a critical function as the bench-mark from which later change in circumstances may be measured.

The present custody decree reveals only that the parties were equally capable parents and that an award of custody to Laurel Cyr was in the children's best interest. On a motion to modify the custody decree a host of questions would immediately arise. What originally made Laurel Cyr the superior choice as custodial parent? What was material to the Superior Court's original decision? What issues are now appropriate for litigation? In effect, the only issue on the motion to modify the custody decree would be the amorphous question of whether custody in Laurel Cyr remains in the best interest of the children. The danger is clear that the parties would attempt, purposefully or inadvertently, to relitigate the original custody decision.

■ To summarize, the custody decree in this case served neither as a vehicle for meaningful appellate review nor as an adjudication of any specific issues pertinent to the best interest of the children involved. Because the decree therefore failed to satisfy the purposes of Rule 52(a), the Superior Court abused its discretion in refusing to comply with Peter Cyr's request for specific findings of fact and conclusions of law. The trial justice is not expected to give detailed findings on each and every factor described in *Costigan* as being generally relevant to the best interest of the child. Yet there must be some indication in the record that the justice considered those factors and sufficient factual findings in the custody order to allow the appellate court to determine the grounds for the justice's decision and whether that decision was supported by competent evidence. *See In re*

*Marriage of Jaramillo*, 37 Colo.App. 171, 543 P.2d 1281 (1975). Since the custody order contained no factual findings supporting the trial justice's choice of the custodial parent, we must remand the case for the entry of specific findings and conclusions on the issue of why the award of custody to Laurel Cyr was in the children's best interest.[2]

2.

*The Asserted Constitutional Right*

Before the custody hearing, Peter Cyr moved the Superior Court to appoint a guardian ad litem to represent the children in the litigation. At the hearing on that motion Peter Cyr's attorney offered an argument referring ambiguously to the children's purported "right" to the appointment of a guardian ad litem in a contested custody case. However, neither the written motion nor the oral argument referred to a specific constitutional or statutory provision creating such a right, and Peter Cyr's attorney summarized his oral argument on the motion by stating,

I would submit to the Court that in cases where a party is able to afford it as in this case as he set forth in his affidavit that certainly no harm can come of this and that there's a lot of potential benefit that can be derived from having independent counsel for the children.

The Superior Court denied the motion.

■ No principle is better settled than that a party who raises an issue for the first time on appeal will be deemed to have waived the issue, even if the issue is one of constitutional law. *Salamone v. City of Portland*, Me., 398 A.2d 49 (1979); *Teel v. Colson*, Me., 396 A.2d 529 (1979). Perhaps the primary reason for that rule is to ensure

2. We wish to make clear that the presiding justice is not required to resolve all disputes concerning the historical facts in the case. The justice need only make findings concerning those facts that are dispositive with respect to his ultimate decision. See 1 R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* 688 (1970). Furthermore, in the absence of a motion by one of the parties for specific findings of fact and conclusions of law, the presiding

justice is under no obligation to volunteer such findings and conclusions. *See Harmon v. Emerson*, Me., 425 A.2d 978 (1981). Finally, although the presiding justice must comply with a request for specific findings and conclusions concerning the original award of custody, the justice is not obliged to make findings or conclusions in ruling on any subsequent motion to modify the original custody decree. M.R.Civ.P. 52(a).

that the trial court has an opportunity to determine the propriety of the relief requested. To that end, the trial justice must be alerted to the need to make findings bearing on the issue asserted. *Reville v. Reville*, Me., 289 A.2d 695, 697 (1972).

The trial justice could not have discerned from the written motion to appoint a guardian ad litem that a constitutional right was being asserted; the motion made no reference to rights of any kind. Although at the hearing on the motion Peter Cyr's attorney mentioned that some authorities had suggested that children might have a "right" to the appointment of a guardian ad litem in a contested custody dispute, counsel never indicated the nature or the source of that right and indeed never explicitly stated that he was asserting such a right. The justice could well have concluded that Peter Cyr's attorney had alluded to a "right" merely for the purpose of underscoring his main argument concerning the practical benefits of guardians ad litem. In those circumstances we must conclude that Peter Cyr failed to preserve any constitutional issues for appeal to this Court.

### 3.
*The Superior Court's Refusal to Appoint a Guardian Ad Litem*

As an alternative to his constitutional argument, which we cannot here consider, Peter Cyr contends that under Maine law the trial justice abused his discretion in declining to appoint a guardian ad litem for the children. According to Mr. Cyr, the Superior Court had the inherent power to appoint a guardian ad litem and had a duty to exercise that power in all the circumstances of this case. Although we agree that the trial justice had the authority to grant Peter Cyr's request for a guardian ad litem, we are satisfied that he committed no error in refusing to do so.

A court has the power to appoint a guardian ad litem for a minor appearing before it when the court finds that the minor's interests require separate representation. *See, e. g., Maine National Bank v. Petrlik*, Me., 283 A.2d 660 (1971). However, the decision to appoint a guardian ad litem is left to the discretion of the presiding justice, who is in a better position than the Law Court to determine whether the present parties to the action can protect the minor's interests.

The trial justice acted within the permissible range of his discretion in denying Peter Cyr's motion for appointment of a guardian ad litem. The ultimate issue in a custody dispute is what custodial arrangement is in the best interest of the children. In the present case the Superior Court was deluged with testimony from lay and expert witnesses concerning the relative capabilities of the Cyrs as parents. Neither party to this bitterly contested custody proceeding had any incentive to minimize his own contributions to the children's welfare or to conceal any subversions of that welfare by the other spouse. An investigator from the Maine Department of Human Services offered a neutral opinion of the children's best interest. The trial justice could reasonably have predicted that a guardian ad litem for the children would provide little additional information while substantially increasing the contentiousness of the hearing.

### 4.
*Sufficiency of the Evidence*

Since this case must be remanded for the entry of specific findings and conclusions on the issue of why the award of custody to Laurel Cyr is in the children's best interest, it is inappropriate on this appeal to attempt to determine whether the evidence might have supported the trial justice's result.

### 5.
*Proceedings on Remand*

Because substantial time has passed since the original custody decree was rendered, it would be inappropriate, on remand of this case, for the presiding justice to determine the best interest of the Cyr children solely on the basis of the facts existing on the date of that decree. Therefore we remand the case with a direction to

the Superior Court to make the requisite specific findings concerning the children's best interest as of the time those findings are made and to conduct any further proceedings the justice deems necessary to establish the facts relevant to those findings.

The entry is:

Appeal sustained in part.

Judgment vacated in part.

Remanded for proceedings consistent with the opinion herein.

All concurring.