**Howard B. HUFF**

**v.**

**Elaine V. HUFF.**

Supreme Judicial Court of Maine.

Argued Jan. 18, 1982.

Decided April 26, 1982.

Smith & Elliott, P. A., Peter W. Schroeter (orally), Charles W. Smith, Jr., Karen B. Lovell, Saco, for plaintiff.

Allison Morrill (orally), Portland, for defendant.

Before McKUSICK, C. J., GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

Defendant Elaine Huff appeals from a judgment of the Superior Court, York County, which reversed a decision of the District Court, Biddeford, and granted custody of the parties' minor child Gerald to plaintiff Howard Huff. Elaine Huff challenges the Superior Court judgment on the grounds that the District Court committed no legal error in considering the plaintiff-appellee's failure to produce the child in court as a factor in the eventual custody determination, that there was sufficient evidence to support the District Court's award of custody to her, and that the Superior Court exceeded its authority by granting custody to Howard Huff. The first two points on appeal are without merit, but we sustain the defendant-appellant's appeal on her third claim of error.

On February 12, 1980, Howard Huff was granted a divorce from Elaine Huff in the District Court, Biddeford. The decree left open the issue of custody of Gerald, pending the receipt of a report from the Maine Department of Human Services which the court had ordered. The reference report was furnished the court on September 30, 1980. Howard Huff had had temporary custody of the child since October 1978.

Several hearings on the custody issue were scheduled, the judge ordering that the child be in the jurisdiction for the final hearing set for November 24, 1980. When Howard Huff failed to appear in court with the child, the case was again continued finally until December 23, 1980, the court again expressly ordering the "Defendant to appear in Court with the child. In default plaintiff will move ex parte, and court will grant custody to plaintiff."[1] On December 23, 1980, neither Howard Huff, nor the child, was in court, but the attorneys for the parties proceeded with the case and a full evidentiary hearing was held. The report of the Department of Human Services was presented along with testimony from the defendant, the plaintiff's mother and two social workers. At the end of the testimony the judge stated:

Let the record show that whereas the plaintiff, Howard Huff is deemed to be in contempt of this Court, his behavior has been contemptuous, the decree of divorce, dated February 12, 1980 is hereby amended, by adding the following words: Care and custody of minor child Gerald J. Huff, age 4, date of birth, 6/21/76, is hereby awarded to the defendant, Elaine V. Huff.

1. Both parties agree that this order mistakenly refers to defendant Elaine Huff as plaintiff.

### Applicable Legal Standard

■ In making custody determinations the trial judge must decide as a "wise, affectionate and careful parent" what custody arrangement will be in the child's best interest. *Cyr v. Cyr*, Me., 432 A.2d 793, 796 (1981). This central focus on the best interest of the child has evolved, undoubtedly, because of the court's awareness that the custody decision may have "a crucial and potentially long-term impact on the physical and psychological well-being and potential future development of the child at a time in its life when its future as a balanced, healthy and happy individual is most clearly at stake." *Harmon v. Emerson*, Me., 425 A.2d 978, 983 (1981).

■ We agree with the Superior Court that the District Court judge in making his decision respecting the custody of Gerald impermissibly deviated from the real and only true objective in such matters, *i.e.* the best interests of the child. It is apparent from the record before us that he used the custody award as a sanction to punish Howard Huff for being in contempt and for his "contemptuous" behavior. At the time of the final continuance granted on November 24, 1980, the docket entry shows that the judge stated he would award custody to Elaine Huff if Howard Huff failed to appear with the child.[2] The court's statement made at the conclusion of the hearing held on December 23, 1980 to the effect as stated

"Let the record show that whereas the plaintiff, Howard Huff is deemed to be in contempt of this Court, his behavior has been contemptuous,"

standing, as it does, and being, as it is, an introduction to, and part and parcel of, the judge's ultimate decision of custody in favor of Elaine Huff, can be interpreted in no other reasonable way than that the judge was making good on his prior notice that if Howard Huff were to default, *i.e.* in not appearing in court with the child, "the court will grant custody to Plaintiff," meaning Elaine Huff as the parties concede. Although plaintiff's behavior in not appearing with the child might have some bearing on the child's best interest, the unmistakable prejudgment of the custody issue, conjoined with the court's complete failure to mention the child's interest while awarding custody, clearly indicates that the court was vindicating its authority rather than addressing the child's best interests. Since the District Court applied the wrong legal standard in making its custody determination, the Superior Court was correct in reversing the decision.

### Sufficiency of the Evidence

■ In making determinations concerning the best interest of the child, the trial judge is invested with broad discretion. *Harmon v. Emerson*, 425 A.2d at 983; *Ziehm v. Ziehm*, Me., 433 A.2d 725, 730 (1981). His decision may be reversed only if it was so erroneous as to constitute an abuse of discretion. *Harmon v. Emerson*, 425 A.2d at 983. Despite the deference that must be paid to the trial court's decision on an award of custody, we agree with the Superior Court that in this case the evidence could not support the award of custody to Elaine Huff.

In *Costigan v. Costigan*, Me., 418 A.2d 1144, 1146 (1980), we articulated a number of factors bearing on the best interests of the child which can become involved in custody determinations, depending on the particular circumstances surrounding the child and the parents or other third parties seeking custody. They include: the child's age, his relationship with his parents and any other persons significantly contributing to his best interests; the parents' wishes as to

---

2. Defendant argues that the trial judge is bound by statute to issue such a warning. This is a misreading of 19 M.R.S.A. § 812(2) which provides:

> If a party to the proceeding whose presence is desired by the court is outside this state with or without the child, the court may order that the notice given under section 806

include a statement directing that party to appear personally with or without the child and declaring that failure to appear may result in a decision adverse to that party. The statute does not provide that such notice may declare that failure to appear *will* result in an adverse decision.

custody; the child's preference (if he is old enough to express a meaningful preference); the duration and adequacy of the current custodial arrangement; the desirability of maintaining continuity; the stability of the proposed custodial arrangement; the motivation of the parties seeking custody; their capacity to give the child love, affection and guidance; and the child's adjustment to his present surroundings.

■ Where, as in this case, the District Court made no findings on the custody issue, the reviewing court must assume that the judge found for the prevailing party upon all issues of fact that are necessary to support the ultimate custody decision. *Harmon v. Emerson*, 425 A.2d at 981. The assumed findings of fact can be set aside only if they are clearly erroneous. *Id.* Although the child had been in Howard Huff's custody since October 1978, no information was available in this record concerning the adequacy of the current custodial status, the desirability of its continuation, Howard Huff's motivation and the child's adjustment to his present surroundings. Since the child was only four at the time of trial, his expression of preference would be of little aid. Similarly, the parents' wishes in this instance are not determinative since both seek custody. In order to support his decision, the trial judge, necessarily, must have made positive findings on such factors as Gerald's relationship with Elaine Huff, the stability of the proposed custody arrangement with Elaine Huff and her motivation and ability to love, guide and nurture the child.

■ Our examination of the record convinces us that any positive findings on these issues are clearly erroneous. The force and effect of the evidence, considered in its entirety, rationally persuades us to a certainty that such findings would be so inconsistent with the great preponderance of the believable evidence that they would not represent the truth and right of the case. *See Harmon v. Emerson*, 425 A.2d at 982.

The record before the District Court reflects that, although Elaine Huff had lived with Gerald when he was an infant and for two months when she and Howard Huff attempted a reconciliation, from the time the father obtained temporary custody of the child before he was three years old until the time of trial, she had had virtually no relationship with Gerald. For approximately a year Gerald lived with Howard Huff's mother, seventeen miles from where Elaine Huff lived. During this period Elaine visited Gerald no more than five times, citing as reasons the difficulty of arranging transportation, her inability to call the senior Mrs. Huff to arrange visits and her feeling of rejection by Gerald. Although Huff's mother would not give Elaine Huff her home phone number, she did provide her phone number at work, but Elaine Huff called only once. Moreover, when Mrs. Huff offered to provide her transportation, Elaine Huff declined the offer, preferring to do it "on her own." Though Elaine Huff may have been prevented from maintaining a relationship with her son when he was taken by his father to South Dakota, she had been less than diligent in maintaining the relationship when the opportunity was available.

Although one social worker testified that Elaine was a very stable person whose only goal in life was to regain custody of her child, the uncontroverted evidence concerning her life demonstrates that her personal history is one of instability. Shortly after giving birth to Gerald out of wedlock at age sixteen, she married Howard Huff who adopted the baby. After the other of the Huffs' children died of Sudden Infant Death Syndrome and Howard Huff joined the legion of long distance truck drivers, Elaine Huff became a drug addict and alcoholic. She attempted suicide and committed herself to the Augusta Mental Health Institute for treatment in October 1978. From this period to the time of trial two years later, Elaine Huff had relationships with three men, two of whom have spent time in Maine State Prison. One of them, whom Elaine Huff described as a pimp, was convicted of assaulting Howard Huff and sentenced to two years at Thomaston. At the time of trial Elaine was pregnant and

living with a third man, with whom she had previously lived for a period of time after her attempted reconciliation with Howard Huff. Although the social worker described her success in a Youth Opportunities job training program, Elaine Huff was fired from a subsequent job at a Portland nursing home. Given Elaine Huff's employment, interpersonal and psychological instability depicted in the record, a finding that the proposed custodial arrangement with her would be stable was clearly erroneous.

Elaine Huff has shown great pertinacity in seeking to regain custody of Gerald. Although the record indicates that she would try to be a good parent if she were to get custody, it also indicates that when Gerald was less than two she beat him for about one-half hour with a paddle to vent her frustration. Such evidence, given the paucity of evidence of other appropriate parenting performance, makes any finding of capacity to love, nurture and provide guidance untenable, since the totality of the evidence is overwhelmingly against any positive findings of fact that the trial judge must have made to support his decision. Our examination of the record discloses no other basis for finding that an award of custody to Elaine Huff was in the best interests of the child; we, therefore, find that the trial judge's decision constituted an abuse of discretion.

### Superior Court Judgment

Although we agree with the Superior Court's reversal of the District Court's judgment, we cannot affirm that part of its judgment which purports to grant custody to Howard Huff and to establish specific visitation rights for Elaine Huff.

 True, Rule 73(a), D.C.C.R., provides in pertinent part:

The Superior Court may enter a judgment reversing or affirming, in whole or in part, the judgment appealed from and shall thereupon remand the case to the District Court from which it originated for entry of the appropriate judgment, or for any further proceedings.

But, as the Advisory Committee's Note to Rule 73(a) points out, this language was designed to insure that the judgment of the Superior Court be limited to appellate relief and that the only judgment on the merits on which execution may be had is the judgment of the District Court if affirmed, or a new District Court judgment entered on remand if the original judgment is reversed. See Maine Civil Practice, 2d Ed., Harvey, McGuire and Wroth, 1981 Supplement to Volumes 1–2, at 653. We must again emphasize the point that an independent evaluation of the evidence by the Superior Court in support of its own custody decision, as was done in the instant case, is an inappropriate function of an appellate court. Cyr v. Cyr, supra, at 796; Cooley v. St. Andre's Child Placing Agency, Me., 415 A.2d 1084, 1086 (1980). Having determined that the judgment of the District Court could not stand, the Superior Court should have remanded the case to the District Court for further proceedings to determine who the proper custodian of the child should be.

Because considerable time has passed since the original custody decree was rendered, on remand the trial judge should hold a full hearing to determine the best interests of the child at present. The hearing should not be limited to an evaluation of information available at the prior hearing, but should include current information on the situations of the child and both parents. Although the District Court judge had ordered that the child be present at the hearing, before issuing another such order the judge on remand should consider whether the participation at the hearing of a child so young would be helpful to the court in making its decision.

The entry is:

Appeal sustained in part.

Judgment of the Superior Court reversing the District Court judgment affirmed.

Judgment of the Superior Court granting custody to Howard Huff and regulating rights of visitation vacated.

Remanded to the Superior Court for entry of judgment vacating the District Court

judgment and for entry of an order of remand to the District Court for further proceedings consistent with the opinion herein.

All concurring.