2004 ME 108

**Clara E. LEONARD**

v.

**Dana A. BOARDMAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 27, 2004.

Decided: Aug. 13, 2004.

---

Clara E. Leonard, Waldoboro, for appellant.

Timothy E. Zerillo, Esq., Timothy E. Zerillo Law Offices, LLC, Portland, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Clara E. Leonard appeals from the judgment of the Superior Court (Lincoln County, *French, J.*) denying her petition for a writ of habeas corpus in which she asked that Dana A. Boardman be ordered to turn over custody of Leonard's eight year-old son to her. She argues that the court was required to turn over possession of the child to her because she is the child's mother and Boardman is not the child's biological father. She also argues that the court erred in admitting the testimony of the child's biological father and in admitting a document in which she wrote that she was giving temporary custody of the child to Boardman. We affirm the denial of the petition for a writ of habeas corpus.

[¶ 2] Leonard also filed a notice of appeal from the judgment of the District Court (Wiscasset, *French, J.*) amending a parental rights order and granting Boardman the primary physical residence of another child, but she has not pursued any issues regarding that judgment in her brief. Therefore, we dismiss the appeal from the judgment amending the parental rights order for failure to prosecute.

## I. FACTS AND PROCEDURE

[¶ 3] The child at the center of this dispute is Dymond, who was born to Leonard in 1995. Dymond's biological father has had very little contact with him. Leonard and Boardman began living together when Leonard was several months pregnant with Dymond. Boardman participated with Leonard in childbirth classes, and he named Dymond. When Dymond was a baby, Boardman took care of him as much as, if not more than, Leonard. Boardman fed Dymond, changed his diapers, and performed all the usual child care activities. Dymond's first words were "Da da" spoken to Boardman. With the exception of a few weeks, Dymond has lived all of his life with Boardman.

[¶ 4] Leonard and Boardman are the natural parents of two other children: a girl born in 1998 and a boy born in 2000. Leonard, Boardman, and the three children lived together as a family, but Leonard suffered from substance abuse and would sometimes leave the home.

[¶ 5] In 2002, Leonard left Boardman and took the three children without informing Boardman of their whereabouts. Boardman made numerous trips to Portland to locate them, and he eventually found them living in Portland in a one-bedroom apartment with Leonard's new partner and Leonard's sister. The children were sleeping on the floor, and Leonard told Boardman that she had been drinking to excess. After she had the children with her for six weeks, Leonard asked Boardman to take the children with him, which he did.

[¶ 6] Leonard then filed a complaint for a determination of parental rights of the two younger children. Neither party sought an order regarding parental rights of Dymond. The District Court (*Kidman,*

*CMO* ) granted Leonard primary residential care of the youngest child and awarded Boardman primary residential care of the daughter. Nonetheless, all three children continued to live with Boardman.

[¶ 7] Following a visit of the three children with Leonard on Christmas 2002, Leonard kept the youngest child with her. Because the child required daily medication and because Boardman was concerned about Leonard's new husband who had a criminal history and mental health problems, Boardman sought an amendment to the parental rights order to give primary physical residence of the youngest child to him. The District Court (*Westcott, J.*) granted Boardman a temporary order for the residential care of the youngest child.

[¶ 8] Leonard objected to the temporary order and opposed Boardman's motion to amend the parental rights order. In Superior Court, Leonard brought a petition for a writ of habeas corpus seeking to require Boardman to turn Dymond over to her. The Superior Court (*Atwood, J.*) ordered that the habeas hearing be consolidated with the hearing on the parental rights motion in the District Court.[1]

[¶ 9] At the consolidated hearing, Dymond's biological father testified.[2] He said that he had not visited with Dymond for many years, but he recently had contact with the child. He gave the court his observations about the loving relationship between Boardman and Dymond. He testified that he approved of Boardman's care of Dymond and Boardman's assumption of the role of Dymond's father.

[¶ 10] The court admitted into evidence a document dated July 15, 2002, signed by Leonard in which she stated that she was giving temporary custody of the three children to Boardman "because of my physical and temporary mental [in]capacity cause[d] by alcoholism." The document further stated: "At a later date when I am rehabilitated we will work out custody arrangement with the court. I also want visitation rights when I am able." Leonard did not object to the admission of the document.[3]

■ [¶ 11] The court found that Boardman was a de facto parent to Dymond[4] and that it was in Dymond's best interest for him to reside with Boardman. The court stated that Leonard was suffering from both substance abuse and mental health problems and that she had often become intoxicated in front of the children. It found that Leonard's ability to make judgments concerning the children was poor and that she had entered into a series of short-term relationships with abusive men. Additionally, the court found Leonard's instability manifested itself in her changing residences frequently and in her inconsistent care of the children.

---

1. At the consolidated hearing, a third matter, a protection from abuse complaint, was also heard. The court granted judgment to Boardman on Leonard's complaint for protection from abuse, and no appeal was taken from that judgment.

2. Dymond's biological father was not named as a party in the petition for a writ of habeas corpus.

3. Although there was no objection to the document, there was evidence surrounding the making of the document. The court found that Leonard participated in the drafting of the document and that it was her knowing and voluntary act.

4. A court may award parental rights and responsibilities of a child to a de facto parent. *Young v. Young*, 2004 ME 44, ¶ 5, 845 A.2d 1144, 1145; *C.E.W. v. D.E.W.*, 2004 ME 43, ¶¶ 10–11, 845 A.2d 1146, 1151; *Stitham v. Henderson*, 2001 ME 52, ¶ 17, 768 A.2d 598, 603.

[¶ 12] Boardman, on the other hand, the court found to be the more stable parent. He had been steadily employed until January 2003 when he left his job for health reasons. The court found that Boardman loved and cared for all three children and was an adequate parent. Although Leonard claimed that she repeatedly left Boardman because he abused her, the court discounted that claim because when she left to be with other men, Leonard left the children in Boardman's care.

[¶ 13] The court denied Leonard's petition for a writ of habeas corpus and granted Boardman's motion to amend the parental rights order by awarding Boardman the primary physical residence of the youngest child and limiting Leonard's contact with the youngest child and the daughter to supervised visits.[5] The court did not issue a separate parental rights order, but in its decision denying the habeas petition, it declared that it was leaving the physical possession of Dymond with Boardman. The court further stated that in the exercise of its equity jurisdiction it was granting custody of Dymond to Boardman. Leonard filed notices of appeal from both judgments, but she briefed only the judgment denying her habeas petition.

## II. DISCUSSION

[¶ 14] A petition for a writ of habeas corpus is a long-recognized means for a parent who has been deprived of the lawful custody of a child to obtain possession of that child. *Stanley v. Penley*, 142 Me. 78, 80, 46 A.2d 710, 711 (1946). Habeas jurisdiction lies with the Superior Court. *Roussel v. State*, 274 A.2d 909 (Me.1971). A parent or guardian demonstrates an illegal restraint of a minor child when that parent or guardian proves (1) a legal right to custody of the child, and (2) that the child is absent without authorization. *Id.* at 914. However, even when a petitioner demonstrates the legal right to the child and that the child is kept by another without authorization, a court in the exercise of its habeas jurisdiction, is not under a duty to release the child to the petitioner. A court has the discretion to have the child delivered to the petitioner, leave the child where he is, or order the child to be delivered to still another person. *Id.* at 921. Furthermore, a court with full equity jurisdiction, in the exercise of that jurisdiction, can determine the best interests of the child and adjudicate a change in the right to custody of the child. *Id.* at 921–22. However, when a court decides to leave the child with the person in possession of the child, and/or grants custody of the child to the person in possession, the remedy is incomplete in comparison to the remedy available to parties who invoke the power of the court to issue a parental rights order pursuant to 19–A M.R.S.A. § 1653(2) (1998 & Supp.2003).

[¶ 15] Here, the trial court found that Leonard did not have a legal right to the custody of Dymond because, as shown in the document she signed, she had given temporary custody of him to Boardman. Because it found that Leonard did not have a legal right to custody, it denied the writ of habeas corpus. However, the court

---

5. Because the court ordered the parties to submit a proposed child support order and a visitation schedule with names of proposed supervisors for Leonard's contact with the two younger children, there was no final judgment of the parental rights order at the time Leonard filed her appeal. Subsequently, the court issued a visitation order. However, the parties failed to submit a proposed child support order, and the court again ordered the parties to do so. We are unaware of the present status of the parental rights order concerning the two younger children and whether the issue of child support has been resolved.

also concluded that an alternate ground existed for denying the writ. That is, in the exercise of its habeas jurisdiction, it decided that Boardman should continue to possess the child, and, in the exercise of its equity jurisdiction, it awarded custody of Dymond to Boardman after finding that it was in Dymond's best interest to be in Boardman's custody.

[¶ 16] The court heard substantial evidence concerning the best interests of Dymond, and it made thorough factual findings. Leonard does not challenge those findings.[6] She argues that, as Dymond's natural mother, her right to possession of him is primary to that of Boardman. The court's primary concern, however, in this dispute between his mother and the person that he has lived with for eight years, must be Dymond's best interests. *See C.E.W. v. D.E.W.*, 2004 ME 43, ¶¶ 10–11, 845 A.2d 1146, 1149–51. The court did not exceed its discretion in (1) denying the writ of habeas corpus; (2) allowing the physical possession of Dymond to remain with Boardman; and (3) granting custody of Dymond to Boardman; and we affirm the judgment.[7]

[¶ 17] However, the court's ruling did not give complete relief to the parties because it did not establish parental rights and responsibilities. A parental rights order, pursuant to 19–A M.R.S.A. § 1653(2), is the appropriate means of establishing parental rights and responsibilities. A parental rights order specifies the parties' rights and responsibilities, such as the frequency and duration of contact, child support, and access to the child's records. *See* 19–A M.R.S.A. § 1653(2)(D) (Supp. 2003). Leaving the child in the physical possession of Boardman, without a parental rights order, places the parties and the child in a difficult position that fails to fully account for the child's best interest.

[¶ 18] However, neither Boardman nor Leonard explicitly requested a parental rights order,[8] and Dymond's biological father was not a party to the proceedings. We recognize that with regard to Dymond, the court was acting in a Superior Court capacity, and there may be some question as to its authority to issue a title 19–A order because the District Court now has exclusive jurisdiction over title 19–A proceedings, pursuant to 4 M.R.S.A. § 152(11) (Supp.2003). Nonetheless, when the habeas or equity jurisdiction of the Superior Court is invoked in a matter involving a child, and the court adjudicates possession or custody in such a way that a more complete delineation of rights and responsibilities would be in the child's best interest, the court should invite the parties to

---

6. Leonard contends that the court's time constraints restricted her ability to demonstrate her fitness as a parent. Our review of the record, however, does not demonstrate that the court exceeded its discretion to set "reasonable time limits on the presentation of evidence." *Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 14, 828 A.2d 210, 214.

7. Leonard also appeals two evidentiary rulings. First, she contends that the testimony of Dymond's biological father should not have been allowed because he was not present in the child's life for seven years, and he should not have been allowed to give his opinion. The court did not err or exceed its discretion

in admitting the biological father's testimony. Secondly, her claim that the court should not have admitted the document she signed is reviewed for obvious error, and we find none. To the extent Leonard makes any other arguments, they are without merit.

8. Historically, the Superior Court had an ability to adjudicate custody as *parens patriae* under its equity jurisdiction even without a request to do so by the parties. *Roussel v. State*, 274 A.2d 909, 923 (Me.1971); *Merchant v. Bussell*, 139 Me. 118, 121, 27 A.2d 816, 818 (1942).

request a title 19–A parental rights order. The title 19–A proceeding can then be heard by the court in a District Court capacity. Further, when, as in this case, the biological father is known, he should be made a party before a parental rights order is issued. Because in this case a possession and custody adjudication, standing alone, may not be in the child's best interest, we remand the matter to the Superior Court for further proceedings.

 [¶ 19] We dismiss Leonard's appeal from the court's judgment granting Boardman's motion to amend the parental rights order concerning the two younger children because she did not brief any issue concerning that appeal and has failed to prosecute it. *See* M.R.App. P. 4(c); *In re Leonard,* 321 A.2d 486, 491 (Me.1974) (dismissing a cross-appeal for failure to prosecute).

The entry is:

Judgment denying petition for writ of habeas corpus affirmed. Appeal from judgment amending parental rights order is dismissed. Case remanded to Superior Court for further proceedings consistent with this opinion.