Melanie COOLEY

v.

ST. ANDRE'S CHILD PLACING AGENCY and Gilbert L. Domingue.

Supreme Judicial Court of Maine.

Argued June 3, 1980.

Decided June 23, 1980.

---

Smith, Elliott, Wood & Nelson, P. A. by George F. Wood (orally), Karen B. Lovell (orally), Saco, for plaintiff.

Preti, Flaherty & Beliveau by John Paul Erler (orally), Joel C. Martin, Portland, for defendants.

Before McKUSICK, C. J., and WER-NICK, NICHOLS, GLASSMAN and ROB-ERTS, JJ.

McKUSICK, Chief Justice.

Petitioner Melanie Cooley appeals from the denial by the Superior Court (York County) of her petition for a writ of habeas corpus. Mrs. Cooley, the prospective adoptive mother of a baby girl placed with her and her husband by St. Andre's Child Placing Agency in 1979, brought the petition after St. Andre's removed the baby from her custody nearly ten months after the placement. On appeal Mrs. Cooley urges that we reverse the Superior Court's determination of the baby's best interests and order that the baby be restored to her physical custody.

We deny the appeal.

The essential facts are not in dispute and may be briefly stated. After a series of interviews with St. Andre's, petitioner and her husband, Harold Cooley, were approved in 1978 as prospective adoptive parents. On May 18, 1979, Sarah, then barely a month old, was placed in the Cooleys' home. The "Adoptive Home Placement Agreement," signed that day by the Agency and the Cooleys, stated that Sarah was placed "with a view to adoption [by the Cooleys] . . within six months to a year." The agreement provided, however, that St. Andre's "reserve[d] the right to remove [Sarah] from [the Cooleys] if at any time previous to legal adoption in the judgment of the Agency such removal is for the best interests of said child."

During the fall of 1979 the Cooleys began to experience marital problems. By December Mr. Cooley was unemployed and the family's savings depleted. After a series of arguments culminating in a physical con-

frontation, petitioner left her husband and went with Sarah to Connecticut to stay with her parents. After initiating divorce proceedings in Maine, petitioner on March 12 took the baby to St. Andre's in Biddeford to discuss the situation; Mr. Cooley, who had expressed an interest in being involved in the adoption discussions, did not appear. The Agency's administrator and supervisor made the decision to remove Sarah from petitioner's custody, and Mrs. Cooley left the meeting without the baby.[1]

Mrs. Cooley promptly filed a habeas corpus petition, and a hearing on the petition was held in the Superior Court on March 24 and 25, 1980. During the initial colloquy of counsel and the court, it was generally agreed that the hearing would focus on the best interests of Sarah in determining whether to return physical custody of her to petitioner. The court's equity jurisdiction was thus invoked by petitioner, recognized and acknowledged as the basic issue by respondents, and fully exercised by the Superior Court justice. After hearing evidence, including testimony from petitioner herself, the justice made oral findings on the record that Sarah's best interests would not be served by returning her to the physical custody of Mrs. Cooley, and he denied the petition for a writ of habeas corpus.

■ Our review of a "best interests" determination is confined to the question whether the trial court in exercising its equity jurisdiction abused its discretion. *Roussel v. State*, Me., 274 A.2d 909, 926 (1971). "A single [j]ustice who is asked to act as a 'wise, affectionate, and careful parent' to do 'what is best for the interest of the child' must be held to be invested with a broad discretion." *Id.*, quoting *Finlay v. Finlay*, 240 N.Y. 429, 433, 148 N.E. 624, 626 (1925). The trial justice who hears and is able to appraise all the testimony of the parties and their experts in social work and child psychology thus exercises a broad discretion, and is charged with a correspondingly weighty responsibility, to determine the particularly sensitive question of a child's best interests. His judgment, when properly exercised on the basis of the evidence before him, is entitled to very substantial deference. The issue on appeal in a child custody case is not at all what appellate judges from reading the cold record would themselves think to be best for the child. An appellate court's independent evaluation of the evidence is especially inappropriate on a delicate issue of this sort. We are aware of only one jurisdiction in which the appellate court applies an "independent evaluation" standard of review. *See In re Snellgrose*, 432 Pa. 158, 247 A.2d 596 (1968).

■ The question on appeal before this court thus is whether the Superior Court justice, viewing the situation as it existed on March 25, abused his discretion by concluding that Sarah's best interests would not be served by returning her to Melanie Cooley. With ample support in the record, the justice found the following family situation on that date. Mrs. Cooley was unemployed, had no savings, and was financially dependent on her parents in Connecticut. She offered no evidence that she was seeking, or going to seek, employment. Even though divorce proceedings were under way, her marital difficulties remained to be resolved, and her husband asserted an interest in Sarah's adoption despite his separation from his wife and the child. To use the words of a psychologist who testified at the hearing, Mrs. Cooley at the time was undergoing "financial duress and task overload." The Superior Court justice was also concerned that it would be harmful to Sarah if he ordered her returned to Mrs. Cooley,

---

1. Petitioner contends that Sarah was removed from her fraudulently because, she alleges, the St. Andre's authorities had prior to the March 12 meeting decided to remove the child and they had enticed her to come to the Agency with the child on a misrepresentation of the purpose of the meeting. The Superior Court made no findings of fact on this contention of Mrs. Cooley, and had no reason to make any, since the alleged misrepresentation, even if it existed, is entirely irrelevant to the determination of Sarah's best interests on March 24–25, 1980. See our discussion below of Mrs. Cooley's assertion of a constitutional right to a preremoval hearing.

only to have Mrs. Cooley's adoption petition denied by the probate court within a few months thereafter. On the facts available to him, the justice understandably had some doubt as to the likely success of a petition for adoption filed by Mrs. Cooley. He appropriately considered whether petitioner would be able to maintain the "continuous, unconditional and permanent" relationship needed by a child of Sarah's age. *See* J. Goldstein, A. Freud & A. Solnit, *Beyond the Best Interests of the Child* 99 (1973).

Since there was an adequate factual basis to support the judgmental conclusion reached by the Superior Court, "it would be inappropriate for us to re-evaluate the facts from a cold record in an effort to find error." *O'Malley v. O'Malley*, Me., 338 A.2d 149, 153 (1975). Given the financial, emotional, and legal problems faced by petitioner on March 25, we cannot say that the Superior Court justice abused his discretion in deciding that the best interests of the baby Sarah would not be served by returning her to petitioner's physical custody.

■ On appeal, Mrs. Cooley also argues that as a prospective adoptive parent she was entitled to a hearing on the question of Sarah's best interests *before* St. Andre's removed Sarah from her custody, and that respondents' denial of a preremoval hearing violated her constitutional right to procedural due process. However, such a claim depends on a showing that petitioner was deprived of some constitutionally protected interest in life, liberty, or property,[2] a showing she has failed to make under the circumstances of this case. Mrs. Cooley and her husband jointly received physical custody of Sarah from St. Andre's, which at all times retained legal custody of Sarah, pursuant to a placement agreement by which the Cooleys agreed that St. Andre's could remove the child at any time prior to adoption. The six-to-twelve month physical custody of Sarah that petitioner *and* her husband were permitted by contract was by its terms conditional and experimental;

furthermore, the contract assumed that any adoption would be by both of the parties contracting with St. Andre's—*i. e.*, both Mr. and Mrs. Cooley. Petitioner gained no "rights" to Sarah of constitutional dimension by her contractually temporary physical custody of the child.

In any event, in this case in which the only relief sought by Mrs. Cooley was physical custody of the child, no court of equity should grant the requested relief as vindication of a violation of a constitutional right to a preremoval hearing where the best interests of that child would be violated by such relief. The Superior Court justice determined, well within the range of his discretion, that the child's best interests required her placement otherwise than with Mrs. Cooley. Whatever remedies Mrs. Cooley might have in other forums—and we are not called upon to delineate those—a court of equity cannot permit her interests to override those of the baby Sarah.

The entry must be:

Appeal denied.

Judgment affirmed.

All concurring.

---

**2.** We do not express or intimate any opinion on the question whether by reason of state licensing and other regulation of St. Andre's Child Placing Agency, action of St. Andre's becomes "state action" for Fourteenth Amendment purposes.