Frank W. SHELDON

v.

Barbara W. SHELDON.

Supreme Judicial Court of Maine.

June 19, 1980.

Dec. 17, 1980.

Fitzgerald, Donovan, Conley & Day, Daniel R. Donovan (orally), Duane D. Fitzgerald, Bath, for plaintiff.

Paul E. Thelin (orally), William D. Pinansky, Jack L. Schwartz, Portland, for defendant.

Before WERNICK, GODFREY and ROBERTS, JJ.

ROBERTS, Justice.

Barbara W. Sheldon appeals from a divorce judgment in the Superior Court, Lincoln County. Mrs. Sheldon asserts that the Superior Court erred in awarding extensive visitation rights to her husband, Frank Sheldon, and in failing to set apart the non-marital property and divide the marital property. We affirm the judgment as it relates to visitation and vacate the judgment as it relates to property.

Dr. and Mrs. Sheldon were married in 1970, and their only child, a son, was born in 1974. Dr. Sheldon was a physician specializing in family practice; Mrs. Sheldon had no regular employment outside of the home but had an independent source of income. As a result of marital difficulties, Mrs. Sheldon moved out of the family's home in Wiscasset in June, 1978, although she returned almost daily to take care of their son. After attempts at counseling proved unavailing, Dr. Sheldon commenced this divorce action in September, 1978, and Mrs. Sheldon filed a counterclaim.

While separated, the Sheldons set up a regular schedule of visitations by which

each parent had the son on at least three different occasions each week. As a result, the child continually moved between each parent, which, according to his mother, caused him to become "weepy and clingy and a bit belligerent." The visitation arrangement also caused further conflicts between the parents. Consequently, in March, 1979, Mrs. Sheldon took the boy to her parents' home in Oregon. While there, Mrs. Sheldon began a divorce action, but in July she returned to Maine with the child.

In late August, 1979, the Sheldons began a new visitation arrangement negotiated by their lawyers. According to this plan, Dr. Sheldon took the son every Wednesday evening and every other week from Wednesday evening to Saturday afternoon, Dr. Sheldon having altered his schedule so he could be free on Thursdays and Fridays. Mrs. Sheldon, who evidently agreed unwillingly to the plan, maintained at trial that the boy was being "pulled apart" by this arrangement and that Dr. Sheldon's visitation should be limited to every other weekend and Wednesday afternoons.

The Superior Court entered a divorce judgment on Mrs. Sheldon's counterclaim on October 22, 1979. Although the court awarded full legal custody of their son to Mrs. Sheldon, Dr. Sheldon was granted weekly visitation rights, including physical custody, from 6:00 p. m. on Wednesday until 12:00 noon on Sunday. Finding that both parties had adequate assets to support the child, the court did not award child support but did order Dr. Sheldon to pay the boy's medical expenses. The judgment concluded by stating: "It is further ordered that there is no marital property which requires division by this court." On motion, the court later made special findings of fact in support of its judgment.

## I. *Child Custody and Visitation*

In challenging the Superior Court's visitation order, Mrs. Sheldon argues, first, that the court did not have the power to order a visitation period as extensive as the one ordered here and, second, that the court's granting visitation rights of such duration constitutes an abuse of discretion.

She bases her contentions on the statutory provision concerning custody contained in 19 M.R.S.A. § 752 (1980 Supp.), which provides in part:

> The court making an order of . . . divorce may make an order concerning the care, custody and support of the minor children of the parties and with which parents any of them shall live . . . .

Mrs. Sheldon asserts that the statute does not allow for an order providing that the child shall live with both parents in alternation.

Mrs. Sheldon points out some of the statutory responsibilities imposed on the custodial parent and argues that these responsibilities cannot be discharged if the child is spending half his time with the other parent. She concludes that the order in this case is inconsistent with the court's responsibility to assign custody to one parent.

■ We do not accept Mrs. Sheldon's interpretation of the Superior Court's order as tantamount to an order of divided custody. Mrs. Sheldon is the sole custodial parent under this order. The decision-making responsibilities of a custodial parent are hers alone, and Dr. Sheldon is not to interfere with them.

There is nothing in the record to suggest that the visitation order will necessarily be an obstacle to Mrs. Sheldon's exercise of her responsibilities. We therefore reject Mrs. Sheldon's contention that this order violated the court's statutory authority, and we need not consider whether a true divided custody order would violate that authority.

■ In reviewing the Superior Court's order for abuse of discretion, we begin by emphasizing that "it would be inappropriate for us to reevaluate the facts from a cold record in an effort to find error." *Cooley v. St. Andre's Child Placing Agency*, Me., 415 A.2d 1084, 1087 (1980), *quoting O'Malley v. O'Malley*, Me., 338 A.2d 149, 153 (1975). It is not the role of an appellate court in reviewing a child custody order to substitute its judgment for that of the trial court. In fashioning a child custody order, the trial justice is vested with broad discretion to

determine what is in the best interest of the child; "[h]is judgment, when properly exercised on the basis of the evidence before him, is entitled to very substantial deference. . . . An appellate court's independent evaluation of the evidence is especially inappropriate on a delicate issue of this sort." *Cooley*, 415 A.2d at 1086; *see also Osier v. Osier*, Me., 410 A.2d 1027 (1980); *Costigan v. Costigan*, Me., 418 A.2d 1144 (1980).

■ We find that the record contains factual support for the presiding justice's order. The record shows that Dr. Sheldon had adjusted his schedule to be free from work on Thursdays and Fridays. Both parents live in the same town, so the order will not subject the child to extended travel. The presiding justice found both parents to be fit to care for the child. More importantly, the court could reasonably conclude that it was in the best interest of the child to have the love and care of both his parents. Three and a half days of visitation with the father, though unusual, was not an irrational means of providing the child with the love of both parents.

Pointing to evidence of bad effects during the initial period of separation and the absence of other evidence in the record concerning the effects of the custody arrangement on the child, Mrs. Sheldon argues that the constant shifting back and forth between parents will have a detrimental effect on their son. Dr. Sheldon asserts that the record shows that once a regular schedule of extended visits with the father had been established, the child settled down and seemed happy. On this evidence, the presiding justice could reasonably have found that the child's earlier problems resulted from the combination of irregular, unscheduled changes and fighting between the parents over the visits.

■ The presiding justice was entitled to presume that once his order had been issued, the parents would abide by it peaceably and work cooperatively to make it serve the best interests of their child. No visitation order can protect fully a child's interests if the parents refuse to abide by that order in good faith. Additionally, no court should attempt to accommodate any continuing animosity of the parents. The court's task is not to grant one parent a victory over the other. Instead, the court's concern is with the child, so that the court does not abuse its discretion by determining that the best interest of the child requires developing the best possible relationship with *both* parents.

Mrs. Sheldon cites numerous cases from other jurisdictions dealing with extended visitation orders or divided custody. See generally cases cited in Annot., 92 A.L.R.2d 695 (1963). Since each divorce presents its own unique set of circumstances, it would not be fruitful to compare the stated facts in these decisions with the record in the present case. We do not, however, find in those decisions any generally prevailing rule against alternating physical custody.

■ Mrs. Sheldon suggests that we, as an appellate court, should adopt a specific rule to be followed by the trial courts. We are not persuaded that the trial courts should be so restricted in the exercise of their discretion. They are better qualified than we to decide what is best in a particular case. As long as there is rational support for the decision, we will not overturn it. This does not mean we will affirm every child custody order, *see, e. g., Osier v. Osier*, Me., 410 A.2d 1027 (1980); nor does it mean that an order like this one may be entered whenever a presiding justice has difficulty deciding who should have custody. Such decisions should only be made when the presiding justice, acting as a "wise, affectionate, and careful parent," *Cooley v. St. Andre's Child Placing Agency*, Me., 415 A.2d 1084, 1086 (1980), concludes after a thorough and careful review of the evidence before him that it is the best possible arrangement for the child. There is no reason to think that the trial judge in this case did otherwise or to find that his decision was without support in the record.

## II. *Marital and Non-Marital Property*

The other issue raised by Mrs. Sheldon on appeal concerns the court's treatment of the

marital and non-marital property. Mrs. Sheldon bases her argument on 19 M.R.S.A. § 722–A, which requires the court to determine what property of the parties is marital and what non-marital, to set apart the non-marital, and to divide the marital. *Grishman v. Grishman*, Me., 407 A.2d 9, 11 (1979). Here, the court simply found that "there is no marital property which requires division." Mrs. Sheldon points out that the court did find that there is marital and non-marital property, citing the findings of fact adopted by the court, and she asserts that a division was requested. Mrs. Sheldon argues that the court's order does not show what property belonged to whom, so that it "only provides a vehicle for further dispute."

Dr. Sheldon responds that the presiding justice correctly determined that all the property had been divided by the parties on their own and no division by the court was required. Dr. Sheldon points to the following exchange:

THE COURT: Is there, a claim for division of marital property on either side?

MR. FITZGERALD: There is a formal claim, I think, your Honor, but I don't believe that we have a dispute.

MR. SCHWARTZ: I don't think so, your Honor.

THE COURT: Based on what I have heard, each have substantial assets which are their own, and there doesn't appear to be a claim as to those. The office that he maintains doesn't appear to have any equity in it, in any event, and I don't really understand that that was in dispute. In there any—

MR. FITZGERALD: I don't believe there is.

MR. SCHWARTZ: I don't believe there is but I would like to have an opportunity to explore it. Not as far as dispute is concerned, but on cross-examination.

■ Dr. Sheldon argues that the parties presented the court with an agreed division of the property and the court's order was in effect a ratification of their agreement, although there was no written agreement to be incorporated. The record contains nothing to show that the court failed to resolve any dispute presented to it or to show that the court made any error in its findings.

Nevertheless, we hold that the existing judgment is inadequate. The presiding justice probably intended the judgment to effect a legal division in the marital property corresponding to the possessory division that the parties had already made. However, the wording chosen by the presiding justice, stating that "there is no marital property which requires division," cannot be construed as effecting a legal division in existing marital property. A divorce decree may incorporate by reference a separation agreement, *Randlett v. Randlett*, Me., 401 A.2d 1008, 1010 (1979), but here no written agreement was referred to. Hence, there is no record anywhere of what division the court in fact adopted.

■ "Marital property" is defined in 19 M.R.S.A. § 722–A(2) (1980 Supp.) as "property acquired by either spouse subsequent to the marriage," with several exceptions. Section 722–A(1) requires the divorce court to divide the property, *Grishman v. Grishman*, Me., 407 A.2d 9, 11 (1979). Until the court makes the division, the property remains legally marital property, by the effect of section 722–A(2), even if the parties have agreed to divide possession and use of the property.

■ It is particularly important that a divorce judgment expressly identify real estate or any other property subject to record title, expressly setting apart that which is non-marital and expressly stating the division of title of the marital. Here, the findings of fact state that "there is marital real estate in the form of a medical office condominium" in Bath. Dr. Sheldon holds title to this office and is solely liable for the funds borrowed for its purchase, and he has "little or no equity" therein. The findings of fact conclude that no division is necessary, which presumably is intended to mean that Dr. Sheldon possesses this property and the court does not need to divide it. The divorce judgment, however, must effect a

legal division by expressly identifying this property and making an award of title thereto, so that the record title to the property will not be left in doubt.

We must therefore remand this case to the Superior Court for modification of the judgment. If we have correctly interpreted the Superior Court Justice's intention, further hearing is unnecessary. He need only correct the wording of his order. If in fact he intended something other than the interpretation we have assumed, he may take such action consistent with this opinion as he deems appropriate.

The entry is:

Judgment vacated as it relates to the disposition of property, affirmed in all other respects.

Case remanded for further proceedings consistent with the opinion herein.

All concurring.