Mary A. ZIEHM

v.

Rudolph A. ZIEHM.

Supreme Judicial Court of Maine.

Argued May 7, 1981.
Decided Aug. 10, 1981.

Mary A. Ziehm pro se (orally).

Harvey & Harvey, Richard P. Sullivan (orally), Biddeford, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

This is an appeal from the affirmance by the Superior Court (York County) of a District Court (Biddeford) decision ordering that custody of a divorced couple's three young daughters be changed from the mother to the father. The mother appeals the decision, contending (i) that the District Court committed reversible error in receiving in evidence the report of the Maine Department of Human Services (DHS) prepared pursuant to 19 M.R.S.A. § 751 (1981) and the testimony of the employee who prepared it, and (ii) that the relevant circumstances had not changed sufficiently to warrant taking custody away from her. We deny her appeal.

Mr. and Mrs. Ziehm were married in Tonawanda, New York, on December 5, 1970, and had three daughters during their marriage. Shortly after the birth of their youngest child, Mrs. Ziehm left her husband, taking the children with her. After staying briefly with her brother in New Jersey, she moved with her children to Maine.

Mrs. Ziehm obtained a divorce from her husband in District Court on September 18, 1978. Pursuant to the divorce judgment, Mrs. Ziehm received custody of the children, and Mr. Ziehm, who had also relocated to Maine, was granted visitation rights. At the time of the divorce, Mr. Ziehm was unemployed and suffering from personal problems.

In November, 1978, Mrs. Ziehm, being unable to care adequately for her children, placed them in foster homes. The children returned to their mother in December, but the youngest was again placed in foster care for the first few months of 1979. In May of 1979 she discussed with the DHS the possibility of putting the girls up for adoption, and she again placed all three in foster care pending that decision. In October, 1979, the DHS successfully placed the children with their father and his present wife, whom he had married the previous May. Mr. Ziehm at that time worked as a welder at Bath Iron Works and remains in its employ.

On February 12, 1980, Mr. Ziehm brought a motion to amend the divorce judgment to give him custody of his daughters, then aged about 9, 7, and 3. Pursuant to 19 M.R.S.A. § 751, the District Court requested the DHS "to investigate conditions and circumstances of the child[ren] and [their] par-

ents." At the subsequent hearing the DHS report was received in evidence, and at the husband's request the DHS employee who made the report testified. Mrs. Ziehm's counsel cross-examined that DHS employee and presented Mrs. Ziehm as a witness. Mr. Ziehm and his new wife also testified. At the conclusion of the hearing the District Court judge gave custody of the three girls to Mr. Ziehm, with the mother having visitation rights. A Superior Court justice affirmed in a three-page opinion.

### 1. *Admissibility of Custody Report of the Department of Human Services*

The legislature has the power to prescribe rules of evidence, *Mansfield v. Gushee*, 120 Me. 333, 336, 114 A. 296, 298 (1921) (statute makes affidavit of indebtedness prima facie evidence in action on account annexed), provided that they pass constitutional muster. *See* 29 Am.Jur.2d *Evidence* § 9 at 44 (1967). We conclude that in 19 M.R.S.A. § 751[1] the legislature has made custody reports of the DHS requested by the divorce court receivable as evidence in aid of the court's responsibilities as *parens patriae* to determine the best interests of the child. Although any statute in conflict with the Maine Rules of Evidence (effective February 2, 1976) is "of no further force or effect," 4 M.R.S.A. § 9–A, we find no conflict[2] that could vitiate the long-existing section 751, originally enacted in 1935.[3]

One law review commentator has said of section 751:

> Several states have statutes that authorize the use of nonconfidential investiga-

---

[1] 19 M.R.S.A. § 751 provides:

**§ 751. Investigation where custody of children involved**

Whenever in any divorce action the custody of a minor child is involved, the court may request the State Department of Human Services to investigate conditions and circumstances of the child and his parents. Upon completion of investigation, the department shall submit a written report to the court at least 3 days before date of hearing. Such report shall be made available by the clerk of said court for examination by counsel before hearing. Upon request of any interested party, the court shall require the person making the report to testify at time of hearing. Whoever participates in making a report under this section or participates in a judicial proceeding resulting therefrom shall be immune from civil or criminal liability, unless such person acted in bad faith or with malicious purpose.

[2] Contrary to plaintiff-mother's argument in the case *sub judice*, M.R.Evid. 702 relating to testimony by experts is permissive only and does not conflict with the legislature's directing admissibility of DHS custody reports ordered by the court. Even as to any hearsay that may be contained in a DHS report, the Maine Rules of Evidence do not conflict with its admission under section 751, in view of M.R.Evid. 802's statement of the hearsay rule: "Hearsay is not admissible except as provided by law .... The words 'as provided by law' include applicable state and federal statutes ...."

Of course, even though objections to a DHS custody report as hearsay or as the product of a nonexpert will not prevent the admission of the report in evidence pursuant to section 751, the same factors of questionable reliability and witness competence that are involved in the hearsay and expert witness rules go to the weight to be accorded section 751 evidence. Either of the parent-adversaries have the statutory right to cross-examine the maker of the report.

[3] P.L. 1935, ch. 48 provided:

**Investigations of cases in which custody of children is involved.** Whenever in any divorce action the custody of a minor child is involved, and the court determines that the proper disposition of the case requires an investigation of the conditions and antecedents of the child and its parents *for the purpose of determining the fitness of either parent to have custody of such child*, the court may notify the state bureau of social welfare. It shall then be the duty of the bureau to make such an investigation and submit to the court a *full report in writing with a recommendation as to the disposition of such child and any other information regarding the case which the court may require*; provided, that within the discretion of the court the action may be continued to the succeeding term for the completion of such report. *Such report shall be available for examination by counsel before a decree is made* and upon request of any interested party the court shall require the person making the report *to testify subject to cross-examination and to rebuttal.*

(Emphasis added) Additionally, and to insure the objectivity and completeness of the report, the legislature, in 1965 (by P.L. 1965, ch. 299) granted qualified immunity from civil or criminal liability to whoever participates in making a report under the section or in a judicial proceeding resulting therefrom.

tory reports in child custody cases. Maine has one of the clearest statutory procedures for the use of such reports. (Footnotes omitted) Gozansky, *Court-Ordered Investigations in Child Custody Cases*, 12 Willamette L.J. 511, 516 (1976). That plain reading of section 751 to make DHS custody reports available for the divorce judge's use as evidence is confirmed by the legislative history of that section, when considered in light of the special nature of child custody proceedings.

■ A judge in discharging his sobering responsibility of deciding the care and custody of a minor child acts not at all as a mere arbiter between the two adult adversaries, simply reacting to the evidence they may see fit to adduce in support of their respective positions. Rather, his function is that described in the oft-quoted words used by Judge Cardozo in *Finlay v. Finlay*, 240 N.Y. 429, 433–34, 148 N.E. 624, 626 (1925):

> He acts as *parens patriae* to do what is best for the interest of the child. He is to put himself in the position of a "wise, affectionate and careful parent" and make provision for the child accordingly. . . . He is not adjudicating a controversy between adversary parties, to compose their private differences. He is not determining rights "as between a parent and a child" or as between one parent and another. He "interferes for the protection of infants, *qua* infants, by virtue of the prerogative which belongs to the [state] as *parens patriae*."

(Citations omitted)

Against the background of that view of the judge's function in a child custody proceeding, the Maine legislature, very shortly after the Bureau of Social Welfare was created,[4] enacted the forerunner of the present section 751, in order to make the investigative facilities of the new bureau available to help the judge in his *parens patriae* duties. *See* P.L. 1935, ch. 48, quoted in n. 3 above. The obvious purpose of the Maine statute was well described by the California Supreme Court in describing its own comparable procedure as follows:

The investigators of domestic relations cases occupy a position of importance in the court as adjuncts of the state judicial system . . . . It is their province, under the direction of the judge, to "assist the court in the transaction" of that particular part of its judicial business which deals most intimately with the welfare of children of broken homes. They are in a position to produce for the judge evidence which might not otherwise be available at all and certainly not otherwise so expeditiously. As unbiased and trained observers they may gain at first hand information which is of vast importance to the court and to the children whose interests are involved, as well also, to the parents whose claims are just, all to the end of giving actual vitality to the proposition that the children's welfare shall be paramount in determining custody problems. They may see the homes in which the children live, they may call without previous notice of the exact time, they may observe whether children appear to be supervised or neglected, nourished or famished, happy or abused. They are far more than "messengers" of the judge without "province to recommend a decision."

*Fewel v. Fewel*, 23 Cal.2d 431, 435–43, 144 P.2d 592, 594–95 (1943).

In our view the original 1935 enactment is particularly clear in giving the bureau's report evidentiary significance. *See* n. 3 above. The bureau made its investigation "for the purpose of determining the fitness of either parent to have custody of such child" and was to report in writing its "recommendation as to the disposition of such child and any other information regarding the case which the court may require." For what possible purpose other than to aid the court as evidence? Before the court could enter a judgment the bureau's report had to be made available for examination by counsel. Furthermore, any interested party had a right to cross-examine the person making the report and to present evidence in rebut-

---

4. The Bureau of Social Welfare was created by P.L. 1931, ch. 216, § 1(2).

tal to the report. The latter provision would clearly be unnecessary unless the report was already before the court with full evidentiary effect.

Subsequent to the original enactment of 1935, the only substantive changes in what became the present section 751 were additions in the 1960s of (i) a requirement that the investigation report be submitted at least five, now three, days before the hearing, and (ii) a qualified immunity from civil or criminal liability for any person participating in making the report. *See* P.L. 1963, ch. 168; P.L. 1965, ch. 299. The first amendment further emphasizes the evidentiary significance of the report; and the second places the preparer of the report in a position of immunity approximately equivalent to that of a witness in court, *cf. Dineen v. Daughan*, Me., 381 A.2d 663 (1978). Thus, the legislative history of section 751 confirms the clear statutory language giving evidentiary standing to DHS custody reports.

▆ However, we must still consider whether the legislature in enacting section 751 as so construed violated the procedural due process rights of either parent.[5] We conclude that it did not. Section 751 satisfies the minimal requirements for a fundamentally fair hearing. Counsel have access to the DHS report at least three days before the hearing and are assured at the hearing of a reasonable opportunity to cross-examine the maker of the report and to rebut the conclusion and underlying facts stated in the report. *Cf. Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) (in making a factfinding in a criminal case, use of a psychiatric report that is not disclosed to the parties nor subject to cross-examination and rebuttal violates due process); *Public Utilities Comm'n v. Cole's Express*, 153 Me. 487, 138 A.2d 466 (1958) (administrative agency may not use in factfinding any matters in its personal

knowledge or in reports on file with it, without disclosing those matters to the parties and permitting cross-examination and rebuttal). With the protections afforded the parties by section 751, the statutorily authorized use of the DHS report in child custody hearings does not "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples . . . ." *Rochin v. California*, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952), *quoting Malinski v. New York*, 324 U.S. 401, 412, 416–17, 65 S.Ct. 781, 786, 788–89, 89 L.Ed. 1029 (1944). Even though some judges, if they were legislators, might prefer to give the divorce judge help through appointment of a guardian ad litem for the children and to make that guardian present evidence of the best interests of the children in accordance with the strictures of the rules of evidence,[6] we cannot say that the choice made by the legislature in 1935 overstepped constitutional bounds.

### 2. *Sufficiency of the Evidence of Change of Circumstances*

Mrs. Ziehm contends that there was not a sufficient change in her circumstances to justify the District Court's order changing custody. 19 M.R.S.A. § 752 states that the divorce court awarding custody of minor children shall retain jurisdiction over the parties and "may alter its order concerning the care, custody, and support of the minor children from time to time as circumstances require . . . ." In discharging its obligation on a motion for change in custody, the burden on the court is

> to make an independent determination whether the child's interests will be better served by requiring some alternative custody arrangement.
>
> . . . .

---

5. Even though the paramount concern of the court in deciding the custody issue must be the best interests of the children, both parents have substantive rights in the matter, some of constitutional dimension. *See Osier v. Osier*, Me., 410 A.2d 1027, 1029 (1980).

6. Divorce court may in its discretion appoint a guardian ad litem for a minor involved in a child custody proceeding. *See Cyr v. Cyr*, Me., 432 A.2d 793, 798 (1981).

Each case must be decided on its own facts. The problem is how to weigh the objective data and the subjective evaluations to make a satisfactory predictive judgment as to what will promote the best interests of the child. This delicate balancing ... is left to the sound discretion of that judge who has the singular opportunity to observe the individuals involved and therefore is in the best position to act on behalf of the State as a wise, affectionate and careful parent.

*Costigan v. Costigan*, Me., 418 A.2d 1144, 1146–47 (1980).

■ Our review of the District Court's action in changing custody from the mother to the father is limited to determining whether the court abused its discretion. *See Absher v. Lacombe*, Me., 432 A.2d 1241, 1243 n. 6 (1981); *Cooley v. St. Andre's Child Placing Agency*, Me., 415 A.2d 1084, 1086 (1980). In our review, we are mindful that the divorce court's discretion is broad and that its "judgment, when properly exercised on the basis of the evidence before [it], is entitled to substantial deference." *Cooley v. St. Andre's Child Placing Agency, supra* at 1086.

■ In the case at bar the District Court judge received ample evidence to justify his order of a change in custody. On the record before him, the judge could have found that since 1978 Mrs. Ziehm had been unable to care for her children, having several times placed them in foster care and having considered the possibility of putting them up for adoption. Additionally, she had been plagued with a series of episodes of emotional instability and had consistently failed to cooperate with the DHS in the foster placement of her children.

In contrast, Mr. Ziehm's circumstances since his relocation in Maine have substantially improved. He has obtained full-time employment as a welder, remarried, and obtained a house sufficient to meet the needs of his children and his new wife. Mr. Ziehm's new wife has demonstrated her willingness to care for the girls, having taken care of them while they were in their father's custody from October, 1979, on.

On the basis of those relative changes in the situations of the parties, we cannot say that the District Court judge abused his discretion in ordering a change in custody.

"Since there was an adequate factual basis to support the conclusion reached" by the District Court, "it would be inappropriate for us to reevaluate the facts from a cold record in an effort to find error." *O'Malley v. O'Malley*, Me., 338 A.2d 149, 153 (1975). Given the manifest problems burdening plaintiff at the time of the custody hearing, we cannot say that there was any abuse of discretion on the part of the divorce court in deciding that the best interests of the Ziehm children were served by changing custody to their father.

The entry must be:

Judgment of the Superior Court affirming the judgment of the District Court affirmed.

All concurring.