**Wendy F. MacCORMICK**

v.

**Christopher W. MacCORMICK.**

Supreme Judicial Court of Maine.

Argued May 1, 1986.
Decided July 22, 1986.

Sayer & Golden, Michael Sayer (orally), Lisbon Falls, for plaintiff.

Morton & Sheldon, John Sheldon (orally) Farnington, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

VIOLETTE, Justice.

Wendy F. MacCormick appeals from a judgment of the Superior Court, Franklin County, affirming the grant of custody of the two minor children to Christopher W. MacCormick, rendered in District Court, Farmington.[1] On appeal she contends: 1) that the District Court judge was biased by a post-hearing *ex parte* communication between himself and Christopher's counsel and that the judge erred in denying her motion for a new trial before a different judge; 2) that the District Court's specific findings of fact regarding custody were clearly erroneous and; 3) that the District Court abused its discretion in awarding custody to Christopher. We affirm the judgment.

I.

This case comes to us on its second appeal after we vacated the judgment and remanded to the Superior Court for entry of an order vacating the District Court judgment and remanding for a new trial on the child custody and related issues. *MacCormick v. MacCormick*, 478 A.2d 678 (Me.1984). On remand in the District Court, hearings were held on four separate days. After the close of evidence on Saturday, September 22, 1984, the judge took the matter under advisement and all concerned left the courthouse. According to letters written by counsel for both parties and the judge, and to affidavits filed by witnesses, the following course of events took place. On the sidewalk across the street from the courthouse, the parties began to disagree

---

1. We do not give weight to the judgment of the Superior Court sitting on intermediate appellate review but rather examine directly the proceed-ings in the District Court. *Delano v. Delano*, 501 A.2d 1287, 1288 n. 1 (Me.1985).

**267**

about the time the plaintiff should turn over the children to defendant the following day, pursuant to the interim order that was in effect which allowed Wendy to keep the children until Sunday at 5 p.m. Wendy's counsel had already left the area by car. Christopher's counsel went back inside the courthouse and spoke to the judge in the clerk's office. He told the judge that the parties were arguing about the time Wendy should turn over the children to Christopher the next day and that he intended to advise his client to take the children back to New York with him immediately. The judge made no response and the attorney left. Thereafter Wendy went into the courthouse and also confronted the judge. She explained that she was in no way attempting to disobey the interim order.

On September 25, 1984, Wendy's attorney wrote to the judge setting out her version of what had transpired. She strongly voiced her distress at the conduct of Christopher's counsel but did not allege that the judge had been biased by the communication, nor did she file a motion requesting his recusal. On September 26, in response to the letter by Wendy's counsel, Christopher's counsel wrote to the judge setting out his version of what took place. His version of the facts varied somewhat from those described by opposing counsel. He also asserted that the judge did not advise him in any way concerning what he had told the judge.

On October 3, 1984 the judge wrote to both attorneys. In describing his version of the events surrounding the communication, he wrote that he was working in the clerk's office after the hearing and that Christopher's counsel appeared at the door. The judge recalled that Christopher's counsel "stated something to the effect that Mrs. MacCormick said something about not returning the children at the appropriate time. I merely happened to be in the clerk's office at the time and certainly did not express any opinion one way or the other as to how the court's pending order would be carried out."

At this juncture Wendy's counsel had a copy of defendant's counsel's letter to the judge dated September 26, and the judge's response and his version of the facts surrounding the *ex parte* communication.

## II.

On appeal the plaintiff asserts that the impartiality of the trial judge was compromised by the *ex parte* communication and that the District Court erred in denying the plaintiff's motion for a new trial. The question we address is whether Wendy waived her right to object to the judge's impartiality by failing to move for recusal until after the judgment had been rendered.

It is a cardinal rule of American jurisprudence that the trial process, including the conduct of the trial judge, should be "wholly free, disinterested, impartial and independent...." *Hughes v. Black*, 156 Me. 69, 73, 160 A.2d 113 (1960); *State v. Bachelder*, 403 A.2d 754, 758 (Me.1979). It is also established law, however, that a party must make a timely motion to disqualify a judge upon the discovery of grounds for the disqualification. *Hughes*, 156 Me. at 80, 160 A.2d 113. A motion for disqualification should come at the "earliest moment after knowledge of the facts" that suggest recusal. *Satterfield v. Edenton-Chowan Board of Education*, 530 F.2d 567, 574 (4th Cir.1975). *Szypula v. Szypula*, 2 Conn. App. 650, 482 A.2d 85, 88 (1984). Failure to make a timely objection will result in a waiver. *Hughes*, 156 Me. at 80, 160 A.2d 113; *Reilly By Reilly v. Southeastern Pa. Transp.*, 507 Pa. 204, 489 A.2d 1291, 1300 (1985). "A party may not elect to take a chance on gaining a favorable decision and then, if the decision is unfavorable, raise grounds for recusal of which [s]he or [her] counsel had actual knowledge prior to the decision being made." *Reilly By Reilly v. Southeastern Pa. Transp.*, 330 Pa.Super. 420, 479 A.2d 973, 988–89 (1984), *aff'd*, 507 Pa. 204, 489 A.2d 1291 (1985). Once a

judgment has been entered in a case, a party has waived his right to disqualify the trial judge and "if he has waived that issue, he cannot be heard to complain following an unfavorable result." *Reilly By Reilly,* 489 A.2d at 1300.

In the case at bar the parties became aware of the *ex parte* communication the day it occurred, on September 22, 1984. Although Wendy's attorney wrote a letter to the judge on September 25, 1984, stating her strong objections to the *ex parte* communication, she did not request that the judge recuse himself nor did she allege bias on the part of the judge. Furthermore, she did not request recusal by the judge even after receiving his letter of October 3, 1984. The decision of the District Court was filed on October 18, 1984 and it was not until October 29, 1984, that Wendy objected to the judge's participation by filing a motion for a new trial or alternatively a motion for amendment of judgment. In her motion she alleged that the conduct of defendant's attorney had prejudiced the hearing and required a new trial before a different judge. The motion was denied without a hearing and, on appeal, plaintiff has not raised this as an issue.

In order to preserve the issue for appeal Wendy was required to make a timely objection to the *ex parte* communication prior to the entry of judgment on October 18th. *Reilly By Reilly, supra* 489 A.2d at 1300. "Because every case cannot be subjected to the unlimited questioning of the trial judge's impartiality, a line must be drawn as to when the impartiality can be challenged and we draw that line at the entry of verdict...." *Id.* Since there is nothing in the record to indicate a motion was filed to disqualify the judge for bias, prior to the District Court's determination on the merits, we conclude that Wendy waived any objection to the qualification of the judge on the basis that he was biased by the *ex parte* communication.[2]

**2.** There are exceptional circumstances in which this Court will entertain unpreserved issues when they rise to a level of substantial injustice. *Teel v. Colson,* 396 A.2d 529, 534 (Me.1979);

### III.

Wendy further asserts that the District Court's specific findings of fact regarding custody made pursuant to a motion under M.D.C.Civ.R. 52(a), were unsupported by the evidence. We review findings of fact under the clearly erroneous standard under which "the trial judge's findings stand unless there is *no* competent evidence to support them." *Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981). After a careful review of the record, we conclude that the specific findings of fact made by the District Court were not clearly erroneous.

Finally, Wendy asserts that the District Court abused its discretion in awarding custody to Christopher. She argues that the lower court's specific findings of fact did not address the relevant factors required by 19 M.R.S.A. § 752(5), regarding the best interests of the children. The trial court is vested with broad discretion in determinations concerning the best interests of the child. *Huff v. Huff,* 444 A.2d 396, 398 (Me.1982). We do not expect the trial judge to give detailed findings on each factor set forth in 19 M.R.S.A. § 752(5), as bearing on the best interest of the child. There must, however, be "some indication in the record that the [judge] considered those factors ... to allow the appellate court to determine the grounds for the [judge's] decision...." *Cyr v. Cyr,* 432 A.2d 793, 797 (Me.1981). We determine that the District Court sufficiently considered the factors under 19 M.R.S.A. § 752(5), insofar as they were reflected in its special findings of fact, and conclude that there was no abuse of discretion.

The entry is

Judgement affirmed.

All concurring.

M.R.Civ.P. 61. After a careful review of the record, however, we find no reason in this case to depart from general appellate procedure.