Barry RODRIGUE

v.

Suzanne BREWER.

Supreme Judicial Court of Maine.

Submitted on Briefs March 31, 1995.
Decided Nov. 29, 1995.

Paul A. Weeks, Norton & Weeks, Bangor, for Plaintiff.

Roberta S. Kuriloff, Ellsworth, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

DANA, Justice.

Suzanne Brewer appeals from the judgment entered in the Superior Court (Waldo County, *MacInnes, A.R.J.*) affirming a judgment of the District Court (Belfast, *Staples, J.*) providing for shared parental rights and responsibilities of their two and a half year old son, Kenai, with primary physical residence alternating every four weeks, parental rights and responsibilities over his religious upbringing being allocated to the mother, and parental rights and responsibilities over his education being allocated to the father. We affirm the judgment.

Suzanne Brewer and Barry Rodrigue were married in December 1989 after a brief courtship. They separated in February 1990, sometime after their child's conception. Although the couple reconciled briefly, they permanently separated in May 1992. The District Court determined that shared parental rights and responsibilities were called for but found that despite the willingness of Brewer and Rodrigue to share in parenting on an equal basis, their inability to separate themselves from their marital conflicts compelled the court to establish a detailed plan of parental contact with Kenai and to allocate certain functions between the parents. The Superior Court reviewed the findings of the District Court and held that the findings were neither clearly erroneous nor an abuse of discretion. This appeal followed.

■ When the Superior Court acts as an intermediate appellate court, we will directly review the decision of the District Court. *Weeks v. Weeks,* 650 A.2d 945, 946 (Me.1994). The paramount consideration for the trial court when allocating parental rights and responsibilities is the best interests of the child. 19 M.R.S.A. § 752(5) (Supp.1994); *Lane v. Lane,* 446 A.2d 418, 419–20 (Me.1982). In doing so, the trial court "must seek not merely to preserve the child from harm, but to discern, 'as a wise, affectionate and careful parent,' what custody arrangement will further the child's best interests." *Cyr v. Cyr,* 432 A.2d 793, 796

(Me.1981) (citing *Sheldon v. Sheldon,* 423 A.2d 943, 946 (Me.1980)). The trial court's decision is entitled to substantial deference, *Lee v. Lee,* 595 A.2d 408, 412 (Me.1991), and we will let the trial court's findings stand unless clearly erroneous, *see Ehrlich v. Bloom,* 585 A.2d 809, 812 (Me.1991), *cert. denied,* 502 U.S. 870, 112 S.Ct. 201, 116 L.Ed.2d 161 (1991) (modification of custody order). *MacCormick v. MacCormick,* 513 A.2d 266, 268 (Me.1986). We have stated in a custody case that the "essential impact of the 'clearly erroneous rule' is that the trial judge's findings stand unless they clearly cannot be correct because there is *no* competent evidence to support them." *Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981) (emphasis in original).

■ Brewer complains that the court's allocation of sole responsibility for Kenai's education to Rodrigue on the basis of his relative educational qualifications was an abuse of discretion. The record indicates that at the time of the hearing Rodrigue, then age 44, was pursuing two Ph.D. degrees: one at the University of Maine in History and the other at Laval University in Quebec City in Geography, and working as a research assistant at the University of Maine. In contrast, Brewer was a high school graduate, a full-time mother, and had worked as a teacher's aide and was currently doing some part-time bookkeeping. The court relied on the testimony of three experts and the parties. Dr. Hamrick testified that compared to the father she would have more concern about the mother's ability to make appropriate choices for Kenai's education and growth. Dr. Gaffney described the father as "an intelligent, sophisticated, sensitive man, a hard-working, dedicated academician and father." Gaffney also stated that the mother frequently deals with problems by withdrawing entirely from communication, and Hamrick testified that "as the development tasks of the child become that of separation from the parent ... the kinds of difficulties [the mother] has with resolving conflict are going to become very significant." There is no suggestion that the court based its decision exclusively on an analysis of the parties' relative educational credentials. The challenged factual findings

are not clearly erroneous. Nor was the allocation of responsibility to Barry an abuse of discretion.

 Further, given Kenai's young age and the uncertainty of the parents' future living situations, Brewer questions the timing of the court's allocation of specific tasks to either parent. Generally, the allocation of parental rights and responsibilities can be modified if circumstances between the parties change. *See* 19 M.R.S.A. § 752(12); *Rowland v. Kingman,* 629 A.2d 613 (Me. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 884, 127 L.Ed.2d 78 (1994) (party filed motion to modify parental rights and responsibilities when party with primary residence intended to relocate out of state). If there is a change in circumstances that substantially affects the best interests of the child, either parent may petition the court to have the plan modified. *Villa v. Smith,* 534 A.2d 1310, 1312 (Me.1987).

Brewer complains that it is not in Kenai's best interest given his need for stability for the primary residence to alternate monthly between Belfast and Quebec City. Because Rodrigue proposed to reside in Quebec City for perhaps eighteen months, the court's allocation of a shared primary residence required Kenai to readjust to a new home environment every four weeks.

 The trial court had before it testimony that although both Rodrigue and Brewer are caring, loving, and capable people who desire to parent Kenai, the intense conflict between them substantially impairs their ability to cooperate in that parenting. At the time of the hearing Kenai was rotating between his parents' homes every two or three days. Dr. Gaffney testified that transitions were stressful and longer visits would diminish that stress. He recommended that the court's order concerning parental responsibilities be postponed for one year while the parents engage in co-parenting counseling. Dr. Gaffney testified that if the decision could not be postponed until the parents were offered the opportunity to develop better skills for conflict resolution, he would recommend the allocation of sole parental responsibility to Brewer. Dr. Hamrick testified that because of the importance of main-

taining Kenai's bond with each parent, joint parental responsibility is the favored arrangement. She also favored alternating the child's residence every three or four weeks until he reached school age.

Although the record indicates that both parents are equally willing and capable of parenting and both requested the 50:50 arrangement to continue even when Rodrigue was in Quebec, Brewer finds fault with the trial court's order because it did not adopt the expert's suggestion that in the short run the ultimate parenting power reside not with either parent but with a "guardianship of some sort or some third party." Even assuming that the court had the authority to suspend parental rights, *see* 19 M.R.S.A. § 752(6), neither parent was economically able to afford the services of a "third" parent. Moreover, the court did urge the parties to undergo co-parenting counseling after Rodrigue returns from Quebec. The court's decision to provide for joint parental responsibility and alternating primary custody for four week periods was not an abuse of discretion.

The entry is:

Judgment affirmed.

WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and LIPEZ, JJ., concurring.

RUDMAN, Justice, dissenting.

I respectfully dissent.

I have no quarrel with the District Court's findings of fact in this case. On the basis of those undisputed findings, however, the court must act within the bounds of its discretion in assigning parental rights and responsibilities. We review the court's assignment of parental rights for an abuse of the court's discretion in determining the consequences of its factual findings. *Harmon v. Emerson,* 425 A.2d 978 (Me.1981). Discretion is not an absolute standard. The discretion accorded a trial court varies according to the principles identified as controlling a particular discretionary determination. When we say we review the court's determination for abuse of discretion we mean we have the responsibili-

ty to determine whether the court acted within the principles identified as bounding that discretionary determination. If the court acts within its principled bounds, its determination is entitled to deference. If, however, as here, the court's determination strays from these principles, that determination constitutes an abuse of the court's discretion.

### The Source of Discretion in Assigning Parental Rights is Equity

The source of the principles that limit the court's discretion in parental rights determinations is venerable. The court's power derives from its general equity jurisdiction. *Roussel v. State*, 274 A.2d 909, 917–22 (Me. 1971).

> The King, as pater patriae, has the direction of infants, which charge is administered in his Court of Chancery.

*Id.* at 918 (quoting *DeManneville v. DeManneville*, 10 Vesey Jr's 52 (1804)).

> That was not a jurisdiction to determine rights as between a parent and a stranger, or as between a parent and a child. It was a paternal jurisdiction, a judicially administrative jurisdiction, in virtue of which the Chancery Court was to act on behalf of the Crown, as being the guardian of all infants, in place of a parent, and as if it were the parent of the child, thus superseding the natural guardianship of the parent.

*Roussel v. State*, 274 A.2d at 918 (quoting *The Queen v. Gyngall*, 2 Q.B. 232 (1893)).

The guardianship jurisdiction of Chancery, with all its old authority and bounded by its old principles, survives in the courts of Maine. In determining parental responsibility incident to its statutory divorce jurisdiction,[1] a Maine trial court applies these principles of equity under its full equitable jurisdiction.

> We find that the Legislature intended for courts in determining issues of custody in divorce proceedings to apply the equitably-based principles which are applied to custody determinations made under the full

equitable jurisdiction, (deriving from the English Court of Chancery) which was originally granted by the Legislature to the Supreme Judicial Court in 1874.

*Harmon v. Emerson*, 425 A.2d at 984.

### Principles Limiting Discretion in Assigning Parental Rights

When properly exercised, a trial court's historic equitable discretion to assign parental rights and responsibilities is entitled to substantial deference. *Ziehm v. Ziehm*, 433 A.2d 725, 730 (Me.1981) (citing *Cooley v. St. Andre's Child Placing Agency*, 415 A.2d 1084, 1086 (Me.1980)). The court, however, may not do as it pleases. In discharging its responsibility to exercise its original equity jurisdiction over the custody of infants, the trial court must apply the *substantive principles* of equity. *Roussel v. State*, 274 at 925.

> A judge in discharging his sobering responsibility of deciding the care and custody of a minor child acts not at all as a mere arbiter between two adult adversaries, simply reacting to the evidence they may see fit to adduce in support of their respective positions. Rather, his function is that described in the oft-quoted words used by Judge Cardozo in *Finlay v. Finlay*, 240 N.Y. 429, 148 N.E. 624, 626 (1925):
>
> > He acts as *parens patriae* to do what is best for the interest of the child. He is to put himself in the position of a "wise, affectionate and careful parent" and make provision for the child accordingly. . . . He is not adjudicating a controversy between adversary parties, to compose their private differences. He is not determining rights "as between a parent and a child" or between one parent and another. He "interferes for the protection of infants, *qua* infants, by virtue of the prerogative which belongs to the [state] as *parens patriae.*"

*Ziehm v. Ziehm*, 433 A.2d at 728.

In *Ziehm* we not only identified the best interest of the child as the fundamental prin-

---

1. 19 M.R.S.A. § 752(3) (1981 & Supp.1994) provides:

 The court making an order of nullity or divorce may make an order awarding parental rights

and responsibilities with respect to a minor child of the parties.

ciple limiting the court's discretion in assigning parental rights, we adopted Justice Cardozo's explication of that principle. The trial court's guiding equitable principle in determining parental rights and responsibilities is not to effect an even-handed division between the parents. Its guiding principle is to act in the best interest of the child. Our legislature has mandated that historic equitable principle, to act in the best interest of the child, as the standard for custody determinations at divorce. 19 M.R.S.A. § 752 (1981 & Supp.1994).[2]

Although we have said repeatedly that the "delicate balancing" of the factors set forth in 19 M.R.S.A. § 752 is left to the sound discretion of that judge who has the single opportunity to observe the individuals involved and therefore is in the best position to act on behalf of the State as a wise, affectionate, and careful parent, as the reviewing court here we must measure the trial court's balancing against a principled standard decreed not only by the historic traditions of equity but by our statute. We have said that as long as there is rational support for the trial court's determination of parental rights we will not overturn it. *Sheldon v. Sheldon*, 423 A.2d 943, 946 (Me.1980). But that "rational support," the reason for the court's determination, must fall within the principle established by equity, articulated by Cardozo, and adopted by this Court. Just any reason will

not do. Mere evidence on the record will not do. Discretionary justification is not a question of clear error of fact. A court is not free to disregard professional witnesses' advice without articulating a principled rationale, grounded in the best interest of the child, for having done so. A court is not free to seek to assign parental rights and responsibilities by balancing them "equally" between one parent and another. It is not enough for the court to simply declare its determination to be in the best interest of the child. The record in the instant case provides no rational support for the court's determination that it is in the best interest of this child to be divided equally between two warring parents.

### The Best Interest of the Child

The trial court here dealt with the custody of a child less than three years of age.[3] The court's decision provided for shared parental rights and shared primary residence, the child to live with each parent for alternating periods of four weeks duration. The court's decree contemplated the father would reside temporarily in Quebec and perhaps then permanently in Alaska and the mother would reside in Belfast, Maine. The decree further ordered the father was to have sole control over the child's education and the mother to have sole control over the child's religious training.

---

**2.** 19 M.R.S.A. § 752(5) (1981 & Supp.1994) provides:

The court, in making an award of parental rights and responsibilities with respect to a minor child, shall apply the standard of the best interest of the child. In applying this standard, the court shall consider the following factors:

A. The age of the child;

B. The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;

C. The preference of the child, if old enough to express a meaningful preference;

D. The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;

E. The stability of any proposed living arrangements for the child;

F. The motivation of the parties involved and their capacities to give the child love, affection and guidance;

G. The child's adjustment to the child's present home, school and community;

H. The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;

I. The capacity of each parent to cooperate or to learn to cooperate in child care;

J. Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;

K. The effect on the child if one parent has sole authority over the child's upbringing;

K–1. The existence of a history of domestic abuse between the parents;

K–2. The existence of any history of child abuse by a parent; and

L. All other factors having a reasonable bearing on the physical and psychological well-being of the child.

**3.** The child was born September 15, 1990. The court entered its memorandum of decision June 4, 1993.

The trial court heard testimony from the parties and from three expert witnesses: two psychologists and a bilingual primary educator. The testimony of the three expert witnesses, called to address the best interest of the child, does not support the court's order assigning shared responsibility.

The linguist refused to give an opinion on anything other than the general virtue of bilingual education and the availability of bilingual education in Quebec. He specifically, clearly, and properly refused to address the psychological and social issues associated with moving a child back and forth every four weeks between Quebec and Belfast but limited his testimony to addressing factors of the linguistic challenge facing a child in such an arrangement. His positive evaluation of bilingual education provides nothing to guide the court in assessing the difficult psychological questions involved here.

Evidence addressing the psychological best interest of the child came in the form of testimony by the psychologists. *Both* expressed their explicit and unequivocating belief that these parents would be incapable of sustaining a joint parenting arrangement.

One of the psychologists, a university counselor who did initial couple therapy for the parties but later provided individual counseling for the father alone, advised that joint responsibility should not be assigned unless a third-party mediator were appointed to negotiate the inevitable conflicts between the parents. She characterized continuing mediation as an "essential ingredient" in any assignment of shared responsibilities. Unfortunately she did not address what should happen if mediation were unavailable. Her testimony therefore provided only an insoluble conundrum for a court financially locked out of the disposition she advised. There must be no shared responsibility, she said, but neither should either parent be given "most" authority. Her advice recommended against both of the only two avenues open to the court and provided no rational basis for choosing either.

The other psychologist, a clinical and school practitioner, also advised against shared responsibility. He recommended that joint responsibility could not work unless the parties could be given time first for counseling to develop an ability to resolve their deep seated conflicts. This psychologist, however, did testify expressly as to a recommended disposition should such help be unavailable. He advised that if a decision had to be made as things stood, the mother should be given sole parental responsibility.

The trial court found that "even though the parties are intelligent and reasonably mature, they are unable to divorce themselves from the stress and rancor that characterized their short term marriage." The court then, recognizing the incapability of the parents to work together, having before it no helpful psychological information from the linguist and an impossible recommendation from the counselor, chose to ignore the clinical psychologist's direct advice. Although there is *no evidence of any kind* in the record that shared parenting responsibility here is in the best interest of the child, the trial court assigned shared responsibility.

I am sympathetic to the financial and time strictures that bar the trial court from structuring what could be an optimal solution to this difficult dispute. That limited resources make recommended alternatives impossible, however, does not mean that the court by default must assign the very joint parenting responsibility both psychologists recommended against. There is no rational support in the record for the court's assigning to these parents, in light of the unavailability of mediation or further counseling, shared parental rights and responsibilities.

The court parceled out parental rights with obvious attention to balancing the parents' interests. Four weeks with father. Four weeks with mother. Educational responsibility to father. Religious responsibility (that the mother did not seek and had not asked for) to mother. The court's strain to effect a kind of legal equipoise is palpable. Such balancing, however, does not satisfy equity's principled command that the court must make its determination in the best interest of the child.

The court's assignment of joint parental rights and responsibilities, split as to time and split as to function, impels the parties,

who universally have been determined to be incapable of resolving their conflicts, into certain conflict. In ignoring the expert advice before it and failing to articulate any evidentiary rationale for doing so, and in structuring an artificially balanced division of rights, the court acted as "mere arbiter between the adult adversaries." The trial court did what Justice Cardozo warned against and determined parental rights as between one parent and another. A determination of parental rights that acts to balance parental interests without evidence that such balancing is in the best interest of the child constitutes an abuse of the court's discretion.

### Internal Consistency of a Discretionary Order

A second principle, beyond the equitable and statutory requirement that the court must act in the best interest of the child, also bounds a trial court's discretion. A court order must be internally consistent. As the trial court must follow applicable principles of equity, so must it follow principles of logic. It must avoid issuing an inherently contradictory order. The District Court order allocating parental rights and responsibilities between Barry Rodrigue and Suzanne Brewer fails to adhere to this fundamental principle of discretion. The order is internally inconsistent.

The order assigns to Rodrigue and Brewer the ultimate in shared parental rights and obligations: to provide their son a primary home. This shared responsibility for guiding and guarding their child's growth and development, just provided by the trial court, is immediately shattered by the trial court's assigning to the father sole decision-making power over the boy's education. The court has given the father the power to place the child in any school he decides, even if such placement destroys shared residency.

Such an inherently contradictory allocation of parental rights and responsibilities cannot be justified as a response to the parents' inability to resolve their conflicts. Although shared parental rights and responsibilities generally may be appropriate, such co-parenting is not always in the best interest of the child and is especially inappropriate

when the parties are found to be "unable to divorce themselves from the stress and rancor that characterized their short-term marriage."

I would vacate the judgment of the District Court.